No. 86,273

IN THE MATTER OF THE MARRIAGE OF MARY JO BRAND,
*Appellant*, and MICHAEL JOSEPH BRAND, *Appellee*.
(44 P.3d 321)

Opinion filed April 19, 2002.

*Ross D. Alexander*, of Alexander, Floodman & Casey, Chtd., of Wichita, argued the cause and was on the brief for appellant.

*Stephen J. Blaylock*, of Blaylock & Cleous, Chartered, of Wichita, argued the cause, and *Joan M. Bowen*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Petitioner Mary Brand filed a motion to modify child support, claiming that respondent Michael Brand's distributions from several Subchapter S corporations in which he was a minority stockholder should be included as income for purposes of calculating child support. The district court determined that the distributions were not income received as defined in the Kansas Child Support Guidelines. Petitioner appeals.

On November 19, 1996, a decree of divorce was granted to petitioner, and respondent. Spousal maintenance of $1,200 per month was awarded until January 1, 2000. The parties were granted joint custody over their three children and petitioner was granted primary residential custody of the two youngest children. Respondent was ordered to pay $800 per month in support and maintenance for the children. As a part of the property division, respondent was awarded the interest in a corporation owned by members of respondent's family, Brand Plumbing, Inc. (Brand Plumbing). Respondent was also granted the interest in several other Subchapter S corporations, including B&E Investments, BBBR Corporation (BBBR), and 3 A.H., Inc. After the divorce, respondent also had ownership interest in Wichita West Development, Inc., a Subchapter S Corporation, and Quail Crossing, L.L.C.

Child support was based on respondent's salary from Brand Plumbing. No self-employment income or distributions from the Subchapter S corporations were included in the income computation for support.

In April 1997, the oldest child resumed living with petitioner. Child support was increased to $1,232 per month until the oldest

child's graduation from high school, when support would reduce to $1,155 per month.

In 1998, Brand Plumbing converted to Subchapter S status, and the taxes due on income of the corporation were then "passed through" to respondent as a shareholder responsible for paying the taxes. Respondent could not elect to take distributions of corporate assets independently and the shareholders did not always make distributions in the amount respondent requested. Respondent received a distribution from Brand Plumbing in 1999 for $42,350 to pay his share of the 1998 and a portion of his share of the 1999 income taxes owed on the corporate income. The amount of the distribution was based upon an accountant's recommendation to the shareholders and a decision by respondent and the other shareholders, respondent's brothers. In 2000, Brand Plumbing distributed $39,500 for respondent to pay 1999 taxes.

Not all the income from Brand Plumbing was distributed in any given year. Sufficient operating capital was retained so that the corporation could continue to purchase material, purchase vehicles, and finance a possible relocation. Brand Plumbing had assets of $458,000 in 1998, $469,000 in 1999, and $409,000 in 2000. The corporation had historically retained such amounts. Since becoming a Subchapter S corporation, Brand Plumbing had not made distributions in excess of the amount necessary to reimburse its shareholders, including the respondent, for their share of the corporation's tax liability.

In 1999, respondent sold approximately 10 percent of his stock in Brand Plumbing to pay petitioner the final installment payment under the divorce property division settlement. Petitioner did not assert the value of that sale should be included in calculating support because it was a sale of an asset that was awarded to the respondent in the divorce.

Respondent held a 25 percent ownership interest in BBBR. Respondent's brothers owned the other shares. Capital gains taxes were paid in 1999 as a result of BBBR's sale of a tract of land. No distributions were made by the corporation to its shareholders.

Respondent and his brothers owned minority interests in the other entities and were considered passive investors. Two friends

of the respondent owned the majority interests. Respondent routinely received a distribution from these entities equal to the amount of his tax obligation on the business' income. Income was reinvested in each of the businesses and applied to reduce the debt held by each entity. Reducing the debt increased "the interest" of the interest holders.

During the marriage, respondent received no distribution in excess of his tax obligations from any of the entities that would have been available to share with his wife and children. After the marriage, he had also received no distributions in excess of his share of entities' tax obligations.

In 1999, respondent reported income on his Schedule K-1 of approximately $200,000 and received approximately $70,000 in distributions. We note respondent reported no income or received no distributions as a result of his interest in Quail Crossing, L.L.C., thus, income and distributions were only as a result of his interest in Subchapter S Corporations. The majority owners of the entities did not expect future distribution amounts to be more than the amount needed by each individual to cover his or her share of the business' taxes.

After her spousal maintenance terminated, petitioner filed a motion to increase child support to $3,300 per month. At that time, respondent's salary from Brand Plumbing was between $4,500 and $5,300 per month after taxes. The $3,300 child support amount requested by petitioner was equal to 60 to 65 percent of respondent's net income.

On September 13, 2000, the district court heard the motion to increase child support. The district judge determined that respondent's income as reported on his tax returns was not income "received" under Kansas Child Support Guidelines, because: (1) the income was not the taxpayer's income but corporate income; (2) the shareholder could have elected to pay taxes at the corporate level; (3) the income had not been historically considered by these parties in child support calculations; (4) the issue was raised after spousal maintenance ended; (5) some income was the result of a sale of corporate assets; and (6) the funds would not have been available to the parties for support when the family was intact prior

to divorce. The district court then set child support at $1,414 per month based on respondent's salary from Brand Plumbing. A timely notice of appeal was filed. This court has jurisdiction over the appeal pursuant to K.S.A. 20-3018(c).

We note that the district court's finding that the shareholder could elect to pay taxes at the corporate level was erroneous. Although it is true that a corporation elects Subchapter S status, thereby passing through taxable income to the shareholders and avoiding duplicate taxation at the corporate level, such an election, once made, does not allow the shareholder to opt to have the earnings taxed at the corporate level from time to time. However, this finding is not important to our decision.

### Standard of Review.

Interpretation of the child support guidelines is a question of law. *In re Marriage of Burton*, 29 Kan. App. 2d 449, 28 P.3d 427, 430 (2001). However, review of an order setting child support is limited to determining whether there is substantial competent evidence to support the trial court's findings. See *In re Marriage of Hendrick*, 21 Kan. App. 2d 964, 968, 911 P.2d 192 (1996). "Substantial evidence is evidence which possesses both relevance and substance so as to form a basis of fact from which the issues can be reasonably resolved." *Dalmasso v. Dalmasso*, 269 Kan. 752, 758, 9 P.3d 551 (2000).

### Taxation and Income of Subshapter S Corporations.

The tax treatment of corporate distributions is controlled by state law. K.S.A. 79-32,139, which governs taxation of Subchapter S corporate income, states:

"A corporation having an election in effect under subchapter S of the internal revenue code shall not be subject to the Kansas income tax on corporations, and the shareholders of such corporation shall include in their taxable incomes their proportionate part of such corporation's federal taxable income, subject to the modifications as set forth in K.S.A. 79-32,117, and amendments thereto, in the same manner and to the same extent as provided by the internal revenue code."

Although a Subchapter S corporation may distribute income, it is not required to do so. *Thomas v. Thomas*, 738 S.W.2d 342, 344 (Tex. App. 1987). Earnings are owned by the corporation, not by the shareholders. 738 S.W.2d at 344. Subchapter S corporations may accumulate profits, referred to as "retained earnings." Retained earnings are the net sum of a corporation's yearly profits and losses. See *Rohrer v. Rohrer*, 715 A.2d 463, 464 n.2 (Pa. Super. 1998).

Subchapter S status provides an alternate method of taxing a corporation's income. *Thomas*, 738 S.W.2d at 344. In a Subchapter S corporation, income tax is paid by the shareholders rather than by the corporation itself. *Greely Gas Co. v. Kansas Corporation Commission*, 15 Kan. App. 2d 285, 286, 807 P.2d 167 (1991) (citing 26 U.S.C. §§ 1361-78 [1988]). When the tax is paid by the individual, the corporation avoids income tax liability. *Thomas*, 738 S.W.2d at 344 (citing 26 U.S.C. § 1371 *et seq.* [1982]).

A Subchapter S corporation allocates various items of income to shareholders based upon the shareholder's proportionate ownership of stock. *Rohrer*, 715 A.2d at 464 n.2 (citing, *e.g.*, 26 U.S.C. 163[d][5][A]). Allocations are itemized on an individual shareholder's Schedule K-1. See *Miller v. Director, Div. of Taxation*, 19 N.J. Tax 522, 528 (2001).

Petitioner argues that the district court erred by not including any of respondent's Subchapter S corporations' income or distributions, itemized on his K-1 income tax statements, in calculating child support. Petitioner asserts that the definition of income in the Kansas Child Support Guidelines is so broadly worded that it includes distributions made by Subchapter S corporations to shareholders. She notes that other jurisdictions, when deciding this issue, have not ruled consistently. She points out that several jurisdictions share her concern that a parent might leave assets in a corporation as retained earnings and avoid support because the assets would not be included in the income calculations used for determining child support. See, *e.g.*, *Williams v. Williams*, 74 Ohio App. 3d 838, 843, 600 N.E.2d 739 (1991).

Petitioner argues that the district court's ruling was overly broad and that it erred in determining that Subchapter S income is cor-

porate income that is not income of the taxpayer. She concludes that if the district court is correct, the taxpayer would not be required to pay taxes on the income. Although petitioner takes issue with the district court's determination that the distributions were not available for support when the family was intact, she fails to provide meaningful argument on this finding.

Finally, petitioner argues that even if the district court is correct in determining that $197,626 of respondent's income was not "received" for purposes of determining respondent's domestic gross income, the district court should have considered the $70,351 distributed to respondent for the purposes of paying his share of the income tax on the corporations' income.

Respondent asserts that because the amounts at issue were never financially available to the family when they were an intact unit, this case is distinguishable from *In re Marriage of McPheter*, 15 Kan. App. 2d 47, 51, 803 P.2d 207 (1990), which determined that a father's Naval Reserve pay relied upon for family expenses during the marriage should be included as income when calculating support. Respondent asserts that because a minority interest holder in a Subchapter S corporation has no ability to control what is distributed, undistributed income is not income for child support purposes. See *e.g., Mitts v. Mitts*, 39 S.W.3d 142, 148 (Tenn. App. 2000), *rev. denied* (2001); *Fennell v. Fennell*, 753 A.2d 866, 868 (Pa. Super. 2000).

Respondent also contends that distributions to pay tax obligations should not be included as income. Respondent directs the court to rulings from other jurisdictions that determined that such distributions should not be included when determining support obligations. See, *e.g., McHugh v. McHugh*, 702 So. 2d 639, 642 (Fla. App. 1997).

Respondent points out that his children have never received the benefit of the taxable share of income from these Subchapter S corporations. He asserts that the retained earnings are the corporations' income and that there is no evidence that he was manipulating retained earnings to reduce his own income. Respondent addresses petitioner's policy argument that failure to include distributions and income would encourage parents to leave assets in

the corporation to avoid support, noting that he has no ability to control the amount distributed to him by these Subchapter S corporations.

## *The Law*

The Kansas Child Support Guidelines are the basis for establishing and reviewing child support orders. District courts are required to follow the Guidelines. 1998 Kansas Child Support Guidelines § I (2001 Kan. Ct. R. Annot. 97); see also *In re Marriage of Thurmond*, 265 Kan. 715, 716, 962 P.2d 1064 (1998). When setting or revising support:

"The court shall consider all relevant evidence presented in setting an amount of child support, including but not limited to the Child Support Adjustments set forth in Section E of the worksheet [concerning Imputed Income]. The calculation of the respective parental child support obligations on Line D.9. of the worksheet [to calculate the Basic Parental Child Support Obligation] is a rebuttable presumption of a reasonable child support order. However, the Court shall complete Section E of the Child Support Worksheet listing all relevant Child Support Adjustments. The Child Support Adjustments shall constitute the written criteria for deviating from the rebuttable presumption. If the Court finds, in the best interests of the child, that the amount of child support as calculated on Line D.9. of the worksheet to be unjust or inappropriate in a particular case, the Court shall apply the Child Support Adjustments to modify the child support amount." 1998 Kansas Child Support Guidelines § I (2001 Kan. Ct. R. Annot. 97).

The Guidelines define the type of proceeds which should be considered income for purposes of calculating support. "Domestic Gross Income" is defined as income which is regularly and periodically received from any and all sources. 1998 Kansas Child Support Guidelines § II. D. (2001 Kan. Ct. R. Annot. 98). "In determining Domestic Gross Income, it may be necessary for the Court to consider historical information." 1998 Kansas Child Support Guidelines § II. D. (2001 Kan. Ct. R. Annot. 98).

Domestic gross income for the self-employed is self-employment gross income less reasonable business expenses. 1998 Kansas Child Support Guidelines § II. H. A "Reasonable Business Expense" includes "actual expenditures reasonably necessary for the production of income." 1998 Kansas Child Support Guidelines § II. G. (2001 Kan. Ct. R. Annot. 100).

This court has not determined whether distributions from Subchapter S corporations should be included as domestic gross income. Other courts, when addressing the issue, routinely distinguish between distributions for income for tax purposes and income for child support purposes. *Thill v. Thill*, 26 S.W.3d 199, 207-08 (Mo. App. 2000); *Mitts*, 39 S.W.3d at 148 (Tenn. App.). Other courts have noted that where complicated business and tax status applies, the Subchapter S income reflected on the individual's tax return may not represent the true amount of cash or benefit that may be available to the parent for the support of the child. *Thill*, 26 S.W.3d at 207 (Mo. App.). Many jurisdictions refuse to impute retained income or corporate debt repayment as shareholder income for purposes of deciding support amounts because such sums are not actually received by the shareholder. *McHugh*, 702 So. 2d at 642 (Fla.); *Fennell*, 753 A.2d at 866 (Pa. Super.).

## Retained Earnings

Courts have more frequently addressed the corporate earnings issue as it relates to sole shareholders or majority owners who have greater control of corporate distributions and the allocation of earnings. The courts have had fewer occasions to address these issues as they pertain to minority shareholders. Decisions which address the income from distributions to majority shareholders provide helpful guidance, although separate consideration should be given to the fact minority interest holders have less, if any, control over distributions.

In situations where the individual with the support obligation is able to control the retention and disbursement of funds by the corporation, he or she will bear the burden of proving that such actions were necessary to maintain or preserve the business. *Fennell*, 753 A.2d at 869 (Pa. Super.).

In some jurisdictions, retained earnings are considered as profit attributable to a sole owner, even if the earnings are retained in the business for business reasons. See *Merrill v. Merrill*, 587 N.E.2d 188, 191 (Ind. App. 1992). However, even in such jurisdictions, the portion of retained earnings to attribute to the sole shareholder parent is a factual question. 587 N.E.2d at 190.

Many state guidelines provide the courts with discretion to closely scrutinize the self-employed parent's financial situation. See, *e.g.*, 587 N.E.2d at 190. When the reporting parent is the *sole* shareholder, courts often direct that the corporation's earnings should be imputed to the shareholder. See *Roth v. Roth*, 406 N.W. 2d 77, 79 (Minn. App. 1987). Some jurisdictions specifically require that consideration be given to the fact that the sole shareholder, by making payment on corporate indebtedness, is increasing personal net worth. *Merrill*, 587 N.E.2d at 190-91 (Ind. App.). In such instances, scrutiny is warranted. 587 N.E.2d at 190 (Ind. App.). When a sole or majority shareholder sets his own salary, consideration should also be given to the corporation's earnings and the benefits it provides for the shareholder. See *Bleth v. Bleth*, 607 N.W.2d 577, 579 (N.D. 2000).

A minority shareholder has less ability to control the amount of earnings retained. Petitioner has not established that respondent manipulated corporate assets, decreased the amount of his salary to increase retained earnings, or acted in any way to shield income.

### Distributions

When a distribution is made, courts differ on the amount to be considered for purposes of support. Some courts base support obligations upon "the amount of income actually distributed . . . rather than upon the higher gross amount of . . . income upon which [the parent] was required to pay federal income taxes." *Mitts*, 39 S.W.3d at 148-49 (Tenn. App.). In *Mitts*, the husband was a minority shareholder of a Subchapter S corporation who had previously been employed by the corporation. After the termination of his employment, he began to receive income distributions in an amount equal to his former salary. The husband's income for support purposes was determined to be the amount he received in distributions and not the amount reported as gross earnings taxed. 39 S.W.3d at 148 (Tenn. App.).

Other jurisdictions, such as Oregon, operate under a blanket rule that when a corporation attributes undistributed income to a minority shareholder for income tax purposes, that amount is presumptively available to the shareholder for calculating child sup-

port. *Perlenfein v. Perlenfein*, 316 Or. 16, 18, 25-26, 848 P.2d 604 (1993). A parent must then present evidence that the "gross income" as calculated is not actually available. 316 Or. at 25. It should be noted, however, that Oregon state regulations, unlike the Kansas Guidelines, do not indicate that corporate income must be "received" in order to be considered. See *Perlenfein*, 316 Or. at 23-24; 1998 Kansas Child Support Guidelines § II. D.

Kansas rules for determining support provide that historical information should be considered when determining when regular income is received for purposes of calculating domestic gross income under the guidelines. See 1998 Kansas Child Support Guidelines § II. D. The historical information regarding respondent's interests supports the district court's conclusion that the amounts distributed to respondent were for the sole purpose of paying his share of the corporation's taxes and were not available to pay support. See *McHugh*, 702 So. 2d at 642 (Fla.).

### Tax Returns as Evidence

Few courts rely solely on personal income tax returns to determine the amount of income available for purposes of calculating support. Taxable income of a Subchapter S corporation which is attributable to a shareholder does not reflect actual income received as a cash distribution. *Taylor v. Taylor*, 118 N.C. App. 356, 364, 455 S.E.2d 442 (1995), *rev'd on other grounds*, 343 N.C. 50, 468 S.E.2d 33 (1996). Even in those states with particularized formulas for determining the income available to self-employed payors, the calculation of income is highly fact specific. *Glass v. Oeder*, 716 N.E.2d 413, 416-17 (Ind. 1999).

There is no presumption that an individual's share of a Subchapter S corporation's income should be included as income for purposes of calculating child support. Individual inquiry on a case-by-case basis is necessary to ensure that the appropriate amount of income is considered "received" when determining "Domestic Gross Income" for the self-employed.

### Policy Argument—Earnings as a Shield

Courts have been reluctant, for policy reasons, to allow a blanket rule that retained earnings of a Subchapter S corporation are not

income to be considered when calculating support. Allowing support to be calculated in this way would encourage shareholders to retain earnings in favor of their own long-term financial interests without regard for the need for support. See, *e.g., Anderson v. Anderson,* 60 Ark. App. 221, 230, 963 S.W.2d 604 (1998). The Arkansas appellate courts have directed that even where the child support calculation chart would allow the taxpayer to deduct from income the amount paid to the shareholder to offset taxation on earnings retained, it is not error for the court ordering support to disallow the deduction when necessary. The chart used to calculate support is merely a rebuttable presumption of the appropriate amount of child support and the presumption can be disregarded where the court makes express findings of fact as to why the presumptive amount is inappropriate. 60 Ark. App. at 233-35.

A factual analysis into whether the retained earnings income should be included is almost always appropriate. Even when working with a statutory formula, evidence to be considered when awarding support includes the extent of the shareholder's ownership and whether distributions could have been distributed to the shareholder. *Gianniny v. Gianniny,* 683 N.Y.S.2d 769, 771, (N.Y. App. 1998). An overview of the entire factual history of retained earnings and distributions is recommended. See *Cauble v. Cauble,* 133 N.C. App. 390, 396-99, 515 S.E.2d 708 (1999). For many jurisdictions, the absence of evidence that the parent wished to shield income from support obligations is highly persuasive. *Fennell,* 753 A.2d at 869 (Pa. Super.); *Williams,* 74 Ohio App. 3d at 843.

In *Williams,* an Ohio appellate court was asked to determine the appropriate amount of income available for child support after a father, a 50 percent shareholder in a corporation, voluntarily ceased drawing a salary from the corporation but continued to receive installment payments of principal and interest on loans he had made to the corporation. The income stream from the loans was awarded to the father as part of the property distribution. The father had the ability to be paid a salary at any time; however, doing so would prohibit the corporation from making loan repayments.

The *Williams* case demonstrates the potential for manipulation of reportable income. The *Williams* court interpreted the state's

statute defining income for purposes of child support. The court determined that it was apparent from the statutory definition that "income" for purposes of the child support computation was sufficiently broad enough to include the retained earnings of the father's corporation. As appellee was the owner of 50 percent of the corporation's stock, the value of his stock increased greatly. Under these circumstances, and in light of the expansive definition of "income" in the statute, the court concluded it would be "grossly inequitable" to allow the supporting shareholder parent "to sit upon his assets, hide behind the shield of corporate business decisions, and prevent his children from enjoying the standard of living they would have enjoyed had the marriage continued." 74 Ohio App. 3d at 843. Under such circumstances, it was unreasonable and an abuse of discretion for the trial court not to consider the retained earnings of the corporation when ruling upon the motion to modify the support order. 74 Ohio App. 3d at 842-43.

As this Ohio case demonstrates, the potential for abuse is present. However, even where the support statute or rule contains a broad definition which could encompass earnings and distributions, a case-by-case analysis is appropriate.

Kansas Guidelines are broadly worded and could be interpreted so that Subchapter S corporate earnings or distributions are included in the definition of domestic gross income. However, in this matter, based on the district court's finding, it would be inappropriate to include the corporate earnings or distributions when setting income for purposes of determining the proper amount of support. As this case demonstrates, no blanket rule would be workable.

### Lump Sum Payout

Petitioner has a stronger argument regarding the income received by respondent from the sale of the land owned by BBBR. However, petitioner fails to acknowledge that Kansas courts have already determined that lump sum payouts are not income regularly received and thus cannot be considered income for purposes of calculating support. *In re Marriage of Case*, 19 Kan. App. 2d 883, 891, 879 P.2d 632, *rev. denied* 255 Kan. 1002 (1994). The

income from BBBR should not be included in respondent's income for purposes of determining support.

## Conclusions

Petitioner's public policy argument is compelling, but the facts of this case do not suggest abuse. Respondent's corporate income is not an amount that the respondent or the court can calculate as income regularly received. To include such amounts would require that respondent's income be revisited every year to determine appropriate support amounts based upon the current yearly distributions. Kansas Guidelines indicate that only income regularly received is to be included in setting support.

Kansas Guidelines give the district court power to consider all relevant evidence in setting the amount of support. There can be no bright line rule concerning undistributed earnings or corporate distributions of a Subchapter S corporation. A corporation must sometimes necessarily retain profits, not everyone stands in a position to force distribution of a corporation's profits, and not all distributions to shareholders increase their ability to pay support. A case-by-case analysis is required before it can be determined whether to attribute retained profits or distributions of a Subchapter S corporation as income for purposes of calculating support.

The district court did not abuse its discretion when it determined that these particular distributions were not "received" for purposes of calculating domestic gross income under the Kansas Child Support Guidelines.

## Factors for Consideration in Determining Income

Whether to characterize corporate earnings, profit, distributions, or salary as income is highly fact specific, *Glass*, 716 N.E.2d at 416 (N.C. App.), as is whether to deduct ordinary and necessary expenses from the corporate distributions when calculating income, *In re Marriage of Upson*, 991 P.2d 341, 343-44 (Colo. App. 1999).

There are many factors to be considered when determining what amount of a Subchapter S corporation's income should be included as income for purposes of calculating support. Some of those factors include past earnings history of the corporation, ownership

share, and the shareholder's ability to control distribution or retention of the net profits of the business. In those cases where income can be manipulated because of the ability to control distributions, heightened scrutiny should be exercised. See *McDaniel v. McDaniel*, 653 So. 2d 1076, 1077 (Fla. App. 1995).

Under the facts of this case, there was no indication that respondent had manipulated income for the purposes of avoiding support obligations. Respondent did not have the ability to control the distribution of corporate assets. Thus, there was substantial competent evidence to support the trial court's decision not to consider retained earnings and distributions in calculating respondent's support obligation.

The decision of the district court is affirmed.

DAVIS, J., not participating.

BRAZIL, S.J., assigned.