(180 P.3d 1060)
No. 96,446

In the Matter of the Marriage of CONI S. LEONI, *Appellant*, and P. DANIEL LEONI, *Appellee*.

Opinion filed December 21, 2007.

*Allen S. Russell, Jr.*, of Kansas City, Missouri, for appellant.

*Tony Shapiro*, of Shapiro & Protzman, P.A., of Overland Park, for appellee.

Before GREENE, P.J., MCANANY, J., and LARSON, S.J.

LARSON, J.: In this appeal, Coni S. Leoni contends the district court improperly modified P. Daniel Leoni's monthly child support

obligation over several years. We find no error in the decision reached by the court below and consequently affirm.

While the parties are familiar with the proceedings and evidence presented at an all-day hearing, we will summarize the history of this case and the facts as testified to and found by the trial court.

Coni Leoni and P. Daniel Leoni were married in May 1986 and divorced in April 1996. Three children were born of the marriage, Blake, d/o/b 04/26/87, Sean, d/o/b 03/20/90, and Joe, d/o/b 02/26/93. Blake was emancipated for child support purposes as of June 30, 2005.

Pursuant to the divorce decree, Daniel was ordered to pay $2,500 per month in child support for the three minor children. This amount was adjusted at times during the late 1990s but was set at the monthly sum of $3,677 as of March 2000.

In November 2001, Coni filed a motion to increase child support. In April 2003, Daniel filed a motion to decrease child support. Due to discovery disputes and other issues, the hearing on the two motions was not held until July 15, 2005. The two principals testified. Many exhibits, primarily income tax returns, were admitted into evidence. Both parties agree that the primary issue was the determination of the yearly income of both Coni and Daniel for child support purposes.

The evidence was centered around Daniel's involvement as owner, sole stockholder, and president of Corporate Sign, Inc., a subchapter S corporation. Corporate Sign has three employees, Daniel, Paula (Daniel's wife as of June 2001), and Linda (Daniel's sister).

Daniel testified extensively about his income as president of Corporate Sign and business expenses he claimed on his tax returns from 2001 to 2004. Daniel claimed some business expenses that the district court found were "neither primarily related to nor necessary for the production of income." These suspect business expenses which were estimated at $20,000 per year included the costs of dinners with his wife at which the two discussed business and country club dues of $3,900 per year. Otherwise, the district court found that Daniel's tax returns were not "materially inaccurate in any way other than overstating some business expenses."

Daniel also testified about the salary that Paula received as an employee of Corporate Sign. The district court found that "the uncontested evidence shows that [Paula's] income from the company is in line with the income she received in prior employment, her education and training, and her prior work experience."

Numerous exhibits were admitted at the hearing. These exhibits included Daniel's personal income tax returns from 1997 to 2004; Corporate Sign's tax returns from 1995 to 2004; Daniel's personal bank statements; and Corporate Sign's financial records. Since 2001, Daniel has filed joint tax returns with his wife, Paula.

Coni testified that after reviewing Daniel's personal income tax returns and Corporate Sign's tax returns, she believed that Daniel was deducting personal expenses as business expenses. Coni created Exhibit 39, which detailed her analysis of Daniel's actual income. The court admitted the first five pages of Exhibit 39 but did not admit the last four pages of the exhibit.

After reviewing all the testimony and exhibits, the district court estimated Daniel's total income for 2001, 2002, 2003, and 2004. To reach this estimate, the court took Daniel's income from his tax return, subtracted Paula's W-2 wages, and added Daniel's claimed business expenses that it determined were unreasonable. The following chart represents the court's calculations.

|  | 2001 | 2002 | 2003 | 2004 |
|---|---|---|---|---|
| Daniel's income from tax return | $464,680 | $162,429 | $190,361 | $721,463 |
| Paula's W-2 wages | − $69,250 | − $35,500 | − $45,000 | − $52,500 |
| Country club dues | + $3,900 | + $3,900 | + $3,900 | + $3,900 |
| Unreasonable business expenses | + $20,000 | + $20,000 | + $20,000 | + $20,000 |
| Daniel's estimated total income | = $419,330 | = $150,829 | = $169,261 | = $692,836 |

The district court then averaged Daniel's income over both a 3-year and a 4-year span and estimated that in 2005, Daniel's income would be approximately $350,000.

At the hearing, Coni testified that she has been unable to work since 1998 due to various medical problems. Coni did not present any expert medical testimony to support her claims. The district court considered her monthly investment income and her earning

potential to find that Coni's annual income for child support purposes was $63,717. This finding is not an issue on appeal.

The parties disagreed about whether the "extended-income formula" should be used to calculate Daniel's child support obligation. Daniel conceded that the formula should be applied in 2003 but otherwise argued against the formula's application. The district court prepared two child support worksheets for each year. One worksheet applied the extended-income formula and one worksheet did not. The following chart represents Daniel's child support obligation as calculated in each of these worksheets.

|  | 2002 | 2003 | 2004 | Jan. 2005 | July 2005 |
|---|---|---|---|---|---|
| Child support due if extended-income formula applied | $2,343 | $2,712 | $8,670 | $5,216 | $3,693 |
| Child support due if formula not applied | $2,132 | $2,331 | $3,298 | $3,007 | $2,131 |

The district court decided to apply the extended-income formula but concluded "that the overall child support should not exceed $5,000 per month." The district court explained that this allowed "for some equalization of the ability to provide for the boys between their two homes, but does not convert child support into a disguised division of property."

In a journal entry dated December 12, 2005, the district court ordered that Daniel's child support obligation was as follows:

"a. Effective January 1, 2002, in the amount of $2,343 per month;
"b. Effective January 1, 2003, in the amount of $2,707 per month;
"c. Effective January 1, 2004, in the amount of $5,005 per month;
"d. Effective January 1, 2005, in the amount of $3,693 per month."

Coni's motion to alter or amend or for a new trial was denied. Coni has timely appealed.

Coni first argues there was not substantial competent evidence to support the trial court's child support determination for the years in issue because of its refusal to consider retained earnings from Daniel's solely owned corporation as income attributable to him during this time frame.

The standard of review of a district court's order determining the amount of child support is whether the district court abused its discretion, while interpretation and application of the Kansas Child Support Guidelines are subject to unlimited review. *In re Marriage of Cox*, 36 Kan. App. 2d 550, 553, 143 P.3d 677 (2006). Use of the guidelines is mandatory, and failure to follow the guidelines is reversible error. Any deviation from the amount of child support determined by the use of the guidelines must be justified by written findings in the journal entry, and failure to make such written findings is reversible error. *In re Marriage of Thurmond*, 265 Kan. 715, 716, 962 P.2d 1064 (1998).

It does not appear that Coni challenges any of the trial court's factual findings but only the manner in which Daniel's earnings were calculated. As such, this does not appear to us to be a lack of substantial competent evidence challenge but rather a claim that the trial court abused its discretion in the way Daniel's income was calculated.

Daniel argues that contrary to Coni's claims, the district court did consider Corporate Sign's retained earnings as part of his income. Daniel contends that the district court calculated his income for child support purposes from his income on his personal income tax returns, which included both his salary from Corporate Sign and the corporation's annual income.

Both parties cite the recent Supreme Court case concerning the effect of subchapter S income and distributions on the calculation of income for child support determinations, *In re Marriage of Brand*, 273 Kan. 346, 44 P.3d 321 (2002), to support their positions on appeal. While *Brand* is instructive, it is factually different and its holding does not require the result which Coni champions.

In *Brand*, a mother moved to increase child support, claiming her former husband's distribution from several subchapter S corporations in which he was a minority shareholder should be included as income for purposes of calculating child support.

The facts in *Brand* showed that the husband did not control the distributions, which were limited to the amount needed by each individual to cover his or her share of the income tax generated by the subchapter S election. During the marriage, the husband had

received no distributions in excess of his income tax obligations which would have been available to share with his wife and children. The testimony was that future distributions were not expected to be more than the amount needed by each individual to cover his or her share of future income tax.

The Supreme Court upheld the district court's decision not to include the distributions as income received for child support purposes because the mother was unable to show that the father, as a minority shareholder, "manipulated corporate assets, decreased the amount of his salary to increase retained earnings, or acted in any way to shield income." 273 Kan. at 355. With the result in *Brand*, actually being more favorable to Daniel than to Coni, the language of *Brand*, which was correctly applied by the trial court in our case, is more significant. The court explained in *Brand* that a determination of whether to include subchapter S corporate earnings, profit, or distributions as income is highly fact sensitive.

The court held that "[i]n situations where the individual with the support obligation is able to control the retention and disbursement of funds by the corporation, he or she will bear the burden of proving that such actions were necessary to maintain or preserve the business." 273 Kan. at 354. The court listed factors a district court should consider when deciding what amount, if any, of a subchapter S corporation's income should be included when calculating support. These factors included the past earnings history of the corporation, ownership share, and the shareholder's ability to control the distribution or retention of net profits in the business. 273 Kan. at 359-60.

The income tax treatment of corporate distributions is governed by state law, with K.S.A. 79-32,139 controlling the Kansas taxation of subchapter S corporate income. It reads as follows:

"A corporation having an election in effect under subchapter S of the internal revenue code shall not be subject to the Kansas income tax on corporations, and the shareholders of such corporation shall include in their taxable incomes their proportionate part of such corporation's federal taxable income, subject to the modifications as set forth in K.S.A. 79-32,117, and amendments thereto, in the same manner and to the same extent as provided by the internal revenue code."

Finally, *Brand* set forth a summary of the relationship between a subchapter S corporation and its shareholders in the following manner:

"Although a Subchapter S corporation may distribute income, it is not required to do so. [Citation omitted.] Earnings are owned by the corporation, not by the shareholders. [Citation omitted.] Subchapter S corporations may accumulate profits, referred to as 'retained earnings.' Retained earnings are the net sum of a corporation's yearly profits and losses. [Citation omitted.]

"Subchapter S status provides an alternate method of taxing a corporation's income. [Citation omitted.] In a Subchapter S corporation, income tax is paid by the shareholders rather than by the corporation itself. [Citations omitted.] When the tax is paid by the individual, the corporation avoids income tax liability. [Citations omitted.]

"A Subchapter S corporation allocates various items of income to shareholders based upon the shareholder's proportionate ownership of stock. [Citation omitted.] Allocations are itemized on an individual shareholder's Schedule K-1. [Citation omitted.]" 273 Kan. at 351.

The *Brand* decision was summarized much as we have done here and relied on in the more recent Court of Appeals decision of *In re Marriage of Unruh*, 32 Kan. App. 2d 770, 88 P.3d 1241 (2004). The district court in our appeal relied on *Unruh's* statement in syllabus ¶ 4 that "[r]easonable business expenses are those actual expenditures reasonably necessary for the production of income" to adjust upward Daniel's income for amounts the trial court found were not primarily related to or necessary for the production of income, which is not an issue on appeal.

*Unruh* is of interest because there a long-time practice of retaining 41% of corporate earnings and distributing 59% of earnings subject to the additional burden of paying all of the income tax on the shareholder's portion of the income of the subchapter S corporation was utilized in computing the husband's income based on the 59% he actually received. Our Court of Appeals panel in *Unruh* noted: "There is nothing in the record to indicate that George was somehow manipulating the Subchapter S corporation for his own benefit and to the detriment of his minor children." 32 Kan. App. 2d at 775.

The *Unruh* opinion observed:

"There is no presumption that an individual's share of a Subchapter S corporate income should be included as income for purposes of calculating child support. A case-by-case inquiry should be made to determine what income is actually 'received' when determining 'Domestic Gross Income' for the self-employed under the Guidelines." 32 Kan. App. 2d at 774.

This is precisely what the trial court below did in the case we consider on appeal. Daniel was the 100% owner of Corporate Sign and as such could control his salary and distributions actually made. But, the trial court specifically found that other than the business expenses which were disallowed, "the financial results depicted in the tax returns are not materially inaccurate."

In our case, the district court made the required factual analysis of the situation and noted that pursuant to the taxation requirements for subchapter S corporations, Daniel had included in his own personal income tax return Corporate Sign's income for each of the involved years. Apparently there were distributions to Daniel in 2001 and 2002, but none in 2003 and 2004. This is not a significant fact since *all* of the Corporate Sign income for *all* of the tax years was attributed to and charged to Daniel.

The trial court actually increased Daniel's income by adding back to such income the business expenses which were found to have been improperly deducted.

We hold the manner in which Daniel's gross domestic income was computed for the years in issue followed sound accounting practices, was legal and lawful under the Kansas Child Support Guidelines, and followed our prior appellate decisions of *Brand* and *Unruh*.

Coni's arguments on appeal concerning the district court's alleged errors in failing to increase Daniel's income by amounts of retained earnings which may have been distributed was correctly rejected by the trial court. As explained by *Brand*, a subchapter S corporation's income can be retained or distributed. Either way, the income is taxed on the shareholder's income tax return. See 273 Kan. at 351. In our case, the trial court treated all of Corporate Sign's income as Daniel's income regardless of whether such income was distributed to Daniel or retained by the corporation. The trial court correctly held that including both the actual corporate income and any retained earnings in Daniel's income would, in fact, as was said below, result in "adding it twice."

The bottom line is that the trial court did it correctly. Following the subchapter S corporation's required pass through of its taxable income to its shareholders, it was not an abuse of discretion nor

was it an error as a matter of law to refuse to increase Daniel's income by amounts of retained income which had previously been utilized in computing his gross domestic income for purposes of computing child support.

Coni's other argument on appeal is that the district court committed reversible error in imposing a $5,000 per month cap on Daniel's monthly child support obligation and in applying an "overall financial condition adjustment" to accomplish this cap. Coni contends there is not substantial competent evidence to support the facts the court utilized to justify the adjustment.

In discussing situations where the combined incomes of the parties is in excess of the maximum contained in the Kansas Child Support Guidelines (Guidelines) schedule, *In re Marriage of Patterson*, 22 Kan. App. 2d 522, Syl. ¶¶ 1 and 2, 920 P.2d 450 (1996), states:

"1. The extrapolation formula contained in the Kansas Child Support Guidelines § IV.C. (1995 Kan. Ct. R. Annot. 88) for income beyond the child support schedules is discretionary and does not establish a rebuttable presumption as to the level of appropriate support.

"2. Although discretionary, the Kansas Child Support Guidelines extrapolation formula must be considered by the trial court when income exceeds the child support schedules."

The trial court made the following comments and findings in paragraphs 23-26 of its memorandum decision:

"23. For most of the years in question, the parties disagree about whether to apply what is commonly referred to as the 'extended-income formula' in calculating child support. (Dan agrees that it should be used in 2003, but otherwise argues against its application.) The present Guidelines go up to $175,200 in combined annual income for the parties; the Guidelines provide a formula that can be applied to determine what child support amount would have been applied to higher amounts. There is no presumption, however, that any higher child support should be paid when combined incomes exceed $175,200 than if they did not. Rather, in such cases, the Guidelines provide that 'the court should exercise its discretion by considering what amount of child support should be set in addition to the highest amount on the Child Support Schedule.' As the Kansas Court of Appeals explained in *In re Patterson*, use of the extended-income formula 'is discretionary and does not establish a rebuttable presumption as to the level of appropriate support.' Nonetheless, *Patterson* tells us that the extended-income

amount 'must be considered by the trial court when income exceeds the child support schedules.'

"24. For this reason, we have prepared two child-support worksheets for each year—one using the extended-income formula and one not using it. All of those worksheets are attached to this decision. The worksheet using the extended-income formula is marked 'A' and the one not using it is marked 'B.' Those calculations would suggest the following potential child-support amounts:

| Child Support Amount | 2002 | 2003 | 2004 | Jan. 2005 | July 2005 |
|---|---|---|---|---|---|
| Applying extended-income formula | $2,343 | $2,712 | $8,670 | $5,216 | $3,693 |
| Not applying extended-income formula | $2,132 | $2,331 | $3,298 | $3,007 | $2,131 |

"25. After review of the domestic-relations affidavits and other exhibits, along with the testimony and the court file, the Court concludes that the extended-income formula should generally be applied, but that the overall child support should not exceed $5,000 per month. The evidence demonstrated that both parties have substantial assets and provide a good standard of living for their children. It is of some significance that Dan was recently able to buy a second home here for cash. In addition, his income in good years allows him much greater ability and flexibility in providing 'extras' for the children. Applying the extended-income formula, though not ordering any monthly support above $5,000, allows for some equalization of the ability to provide for the boys between their two homes, but does not convert child support into a disguised division of property; Coni received her share of the value of the business as part of the division of assets at trial. The Court also notes that Judge Russell, who heard the parties' divorce trial and had a full understanding of the assets divided at trial, applied the extended-income formula in 1998.

"26. For 2004 and the first half of 2005, the Court has adopted a child-support worksheet that makes an 'overall financial condition' adjustment to reflect the partial use of the extended-income formula. Those worksheets are attached as worksheet '2004-C' and 'Jan. 2005-C.' In each case, the final child-support amount is $5,005 per month, reflecting the base child support of $5,000 and one-half of the District Court Trustee's enforcement fee."

A district court may deviate from the presumptive amount provided in the guidelines only if it makes specific written findings explaining the deviation. *In re Marriage of Aubuchon*, 22 Kan. App. 2d 181, 182, 913 P.2d 221 (1996). "Child Support Adjustments are considerations of additions or subtractions from the Net Parental Child Support Obligation to be made in the best interests of the child." Guidelines § II.H. (2006 Kan. Ct. R. Annot. 109). Based on relevant evidence, if the district court finds an adjustment is necessary, the court must complete section E of the child support

worksheet. Completing section E constitutes the written findings for deviating from the rebuttable presumption. Guidelines § I. (2006 Kan. Ct. R. Annot. 105).

When setting child support, the district court is to consider all relevant factors, including the overall financial condition of the parties which may be used to deviate from the basic child support award if the deviation is found to be in the best interests of the child. Guidelines § IV.E.6. (2006 Kan. Ct. R. Annot. 121). In this case, an adjustment was applied with the following reasons given for imposing this cap: (1) both parties had substantial assets and were able to provide for the children; (2) the cap would give Daniel flexibility to provide "extras" for the children; and (3) the cap would ensure that neither Coni nor the children would receive a windfall.

The first two reasons provided by the district court address why it is in the best interests of the children to impose the cap. Under the district court's reasoning, the children could be properly cared for even if the court imposed the cap, and the cap further ensured that Daniel could provide "extras" for his children. The district court complied with the guidelines by both completing section E of the child support worksheet and providing reasons why it was in the children's best interests to apply the adjustment.

Contrary to Coni's claims that substantial competent evidence does not support the district court's finding that Daniel provided "extras" for the children, the district court did not find that Daniel had provided such "extras." The court merely found that imposing the cap would make it easier for Daniel to provide these "extras" in years in which his business was particularly profitable.

The district court has discretion to set the amount of child support when the combined incomes exceed the highest amount shown on the child support schedule. Guidelines § III.B.3. (2006 Kan. Ct. Annot. 109). There are balancing concerns, the standard of living the child would have enjoyed absent parental separation and dissolution and also to ensure adequate support for upbringing the child without allowing windfalls. *Patterson*, 22 Kan. App. 2d at 528-29. This is precisely what the district court did in this case.

Coni expresses concern this cap would prevent her from presenting evidence to the court at a later date to justify a modification. No such order was made. The cap was imposed only for 2004 and the first part of 2005.

The district court did not abuse its discretion in utilizing and applying the overall financial condition adjustment to establish the cap on the child support amounts. There was substantial competent evidence to support the trial court's ruling, which was lawfully made.

We have considered all of Coni's arguments and reviewed the extensive record in this matter. The district court's findings and decisions are affirmed.