

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00016-CV
_____

**IN THE MATTER OF THE MARRIAGE OF JEFFERY R. TUTTLE AND LISSA RENEE TUTTLE AND IN THE INTEREST OF B.W.T., A MINOR CHILD**

_____

On Appeal from the 45th District Court
Bexar County, Texas
Trial Court No. 2017-CI-10119, Honorable Norma Gonzales, Presiding

_____

May 4, 2020

## OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

This appeal arises from the divorce of Jeffery R. Tuttle and Lissa Rene Tuttle.[1] As part of its final divorce decree, the trial court "confirmed" that Lissa owned as her separate property a half interest in the Bexar County home. The home was bought during the marriage with Jeffery's separate property (i.e., inheritance), but its deed was placed in the names of both Jeffery and Lissa. The trial court also ordered Jeffery to pay child support.

_____

[1] The record contains both an appellant's brief filed by Kenneth W. Anderson as counsel for Jeffrey Tuttle and a reply brief filed by Jeffery R. Tuttle, pro se. Anderson having made an appearance on behalf of his client and not having withdrawn as legal counsel on behalf of Jeffery R. Tuttle, the latter's effort to file a reply brief pro se constitutes impermissible hybrid representation. *In re Barnes*, No. 03-11-00647-CV, 2012 Tex. App. LEXIS 748, at *1–2 (Tex. App.—Austin Jan. 25, 2012, orig. proceeding) (mem. op.) (noting that pro se filings by a litigant with legal counsel who has not withdrawn is impermissible hybrid representation). Consequently, the reply brief will not be considered by the Court.

In calculating the sum payable, the trial court considered as part of his net resources, retained earnings held by a Subchapter S corporation that he owned. The two issues before us concern whether the trial court accurately determined that Jeffery gave Lissa a gift of a half interest in the Bexar County home and permissibly included retained earnings in calculating his child support obligation. Jeffery contends that it erred in both respects. We affirm in part and reverse in part.[2]

*Issue One – Gift*

Through his first issue, Jeffery asserts that the evidence is legally and factually insufficient to support the trial court's ruling that he "intended to make an inter vivos gift to [Lissa] of a fifty percent (50%) interest in the Bexar County Residence" and "[a]t most, . . . intended a gift cause [sic] mortis." We overrule the issue.

The applicable standard of review is abused discretion. *Knowlton v. Knowlton,* No. 04-17-00257-CV, 2018 Tex. App. LEXIS 3408, at *5 (Tex. App.—San Antonio May 16, 2018, no pet.) (mem. op.). The standard overlaps with the traditional sufficiency of evidence standards in family law cases. *Id.* Thus, the legal and factual sufficiency of the evidence are not independent grounds of review but, rather, part of the abused discretion analysis. *Id.* at *5–6. And when the burden of proof at trial is by clear and convincing evidence, as it was here, we employ a higher standard in performing our legal and factual sufficiency analysis. *Id.* at *6. Evidence is clear and convincing evidence when it produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* Yet, it need not be clear and unequivocal. *Id.*

---

[2] Because this appeal was transferred from the Fourth Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

at \*7. Finally, per the standard of review, we construe the evidence in a light most favorable to the trial court's judgment. *Id.*

Next, a gift involves a voluntary transfer of property to another made gratuitously and without consideration. *Id.* at \*7–8. It is established by the donee proving 1) the intent to make a gift, 2) delivery of the property, and 3) its acceptance. *Id.* at \*8. The principle issue is the donor's intent. *Id.* With that said, we turn to the record at bar.

No one denies that the Bexar County home was acquired during the community. Nor do they question that Jeffery 1) used inheritance or separate property from his deceased parents to buy it and 2) placed title to the home in both his and Lissa's name. Placing title to the realty in joint names under that circumstance created a rebuttable presumption that he intended to give Lissa an undivided half interest in the home. *See Office of the AG v. Kalenkosky*, No. 04-09-00762-CV, 2011 Tex. App. LEXIS 2939, at \*9 (Tex. App.—San Antonio Apr. 20, 2011, no pet.) (mem. op.) (stating that "[w]hen a spouse uses separate property to pay for property acquired during the marriage and takes title to it in the names of both spouses, it is presumed that the purchasing spouse intended to give the other spouse an undivided one-half interest in the property"). The presumption can be rebutted, though, by evidence clearly establishing no intention to make a gift. *Id.*

Though Jeffery denied intending to give Lissa half ownership of the home, the trial court had before it other evidence. It included testimony that: 1) the two were reuniting at the time the property was acquired; 2) Jeffery also bought Lissa a vehicle and titled it in her name; 3) Jeffery wanted to "make things right" and said "[w]e were going to have a home"; 4) Jeffery added Lissa to "accounts" from which she was previously excluded; 5) Jeffery said he was "not going to leave you guys [i.e., Lissa and their son] without a home";

6) Lissa "deserved this home and that he was happy that finally we were going to be a family"; 7) Jeffery was "very emotional"; 8) Lissa selected the house, undertook the repairs needed, and moved into it with their son; and 9) Jeffery had Lissa named as one of the grantees.

Given that intent lies within one's mind and same is not readily susceptible to reading, our law has long recognized that it may be established through both direct or circumstantial evidence. *See Consol. Reinforcement, L.P. v. Cheraif*, No. 04-18-00443-CV, 2019 Tex. App. LEXIS 4371, at *5 (Tex. App.—San Antonio May 29, 2019, no pet.) (mem. op.) (observing that intent, in that case fraudulent intent, may be inferred from direct and circumstantial evidence). Even if we were to ignore the rebuttable presumption erected by placing Lissa's name on the deed, Jeffery's act of placing it on the deed may be considered circumstantial evidence of Jeffery's intent. *See Harrison v. Harrison*, 321 S.W.3d 899, 903–04 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (wherein the fact that husband placed wife's name on deed to one parcel while omitting it from another was considered as evidence to support a finding of gift). That he had a donative mindset while reuniting with Lissa is further circumstantially exemplified by his acquiring a car for her and placing it in her name and naming her on "accounts" from which she was previously omitted. Coupling that with the other bits of evidence itemized above provided the trial court with basis to form a firm conviction and belief not only that he had the requisite intent to make a gift but also that he delivered and she accepted the gift. So, upon construing the evidence in a light most favorable to the trial court's finding of a gift, we conclude that its decision was not an instance of abused discretion.

*Issue Two – Retained Earnings*

Via the last issue before us, Jeffery contends that the trial court abused its discretion when including "undistributed retained earnings from [his] Subchapter S corporation in the calculations of [his] child support obligation." In other words, he attacks the amount of support the trial court ordered him to pay because it utilized an improper criterion in arriving at the sum. The improper criterion was the inclusion of the aforementioned retained earnings in the support equation. We sustain the issue.

The pertinent standard of review again is one of abused discretion. *Smith v. Hickman*, No. 04-19-00182-CV, 2020 Tex. App. LEXIS 2457, at *3–4 (Tex. App.—San Antonio Mar. 25, 2020, no pet. h.) (mem. op.) (stating that most of the appealable issues in a family law case are evaluated under the abuse of discretion standard, be it the issue of property division incident to divorce or partition, conservatorship, visitation, or child support). That discretion may be abused when the trial court lacks sufficient evidence upon which to exercise it. *See id.* at *5–6 (finding that "the trial court abused its discretion on the issues of conservatorship, child support, and property division because it did not have sufficient evidence upon which to exercise its discretion").

Next, the Family Code requires a trial court to calculate "net resources" to determine an obligor's child support liability. Tex. Fam. Code Ann. § 154.062(a) (West Supp. 2019). The term "resources" is quite expansive. It includes 1) 100 percent of all wage and salary income and other compensation for personal services, 2) interest, dividends, and royalty income, 3) self-employment income, 4) net rental income, and 5) all other income actually being received. *Id.* § 154.062(b)(1)–(5). Excluded, though, are 1) return of principal or capital, 2) accounts receivable, 3) benefits paid in accordance

with the Temporary Assistance for Needy Families program or another federal public assistance program, and 4) payments for foster care of a child. *Id.* § 154.062(c)(1)–(4). And to arrive at "net resources," the trial court deducts 1) social security taxes, 2) federal income tax, 3) state income tax, 4) union dues, 5) expenses for the cost of health insurance, dental insurance, or cash medical support for the obligor's child ordered by the court, and 6) nondiscretionary retirement plan contributions, if the obligor pays no social security taxes. *Id.* § 154.062(d)(1)–(6).

Missing from the itemizations above is mention of retained earnings of a Subchapter S corporation. This may be because corporate retained earnings, though taxable as personal income, remain corporate assets owned by the corporation, not the corporate shareholder. *Dyer v. Dyer*, No. 03-16-00753-CV, 2018 Tex. App. LEXIS 4380, at *15 n.6 (Tex. App.—Austin June 15, 2018, no pet.). They are not subject to division between spouses upon divorce. *Id.*; *Thomas v. Thomas*, 738 S.W.2d 342, 344 (Tex. App.—Houston [1st Dist.] 1987, writ denied) (stating that "[c]ourts in community property states have unanimously held that corporate earnings remained corporate property until distributed and, therefore, were not divisible on divorce"). And, though dividends paid a shareholder may be income for purposes of a § 154.062(b) calculation, a corporation's earnings or surplus funds normally do not constitute a dividend while retained by the entity. *LeGrand-Brock v. Brock*, 246 S.W.3d 318, 322 (Tex. App.—Beaumont 2008, pet. denied). Though analogy from this law would appear dispositive of the issue before us, not all is as it seems.

Our research uncovered no Texas authority expressly covering the topic here. Nor did the parties cite us to any. However, neighboring jurisdictions have spoken on the

6

matter. For instance, the court in *In re Marriage of Brand*, 273 Kan. 346, 44 P.3d 321 (2002), observed that "[c]ourts have been reluctant, for policy reasons, to allow a blanket rule that retained earnings of a Subchapter S corporation are not income to be considered when calculating support." *Id.* at 328. According to *Brand,* such an immutable rule "would encourage shareholders to retain earnings in favor of their own long-term financial interests without regard for the need [to] support" their children. *Id.* The *Brand* court was not alone in so observing.

The intermediate appellate court in *Williams v. Williams*, 74 Ohio App.3d 838, 600 N.E.2d 739 (4th Dist.1991), likewise concluded that retained earnings may be a component of the child support equation. It did so given the potential for gross inequity in allowing a parent "to sit upon his assets, hide behind the shield of corporate business decisions, and prevent his children from enjoying the standard of living they would have enjoyed had the marriage continued." *Id.* at 743. Similar policy concerns also induced the New Mexico Court of Appeals to caution district courts to "be careful to avoid allowing the shareholder-spouse to manipulate salary, corporate distributions, and retained earning[s] to his or her unfair advantage, thereby substantially skewing one's support obligations." *Clark v. Clark*, 2014-NMCA-030, ¶ 14, 320 P.3d 991, 2013 N.M. App. LEXIS 74. The *Clark* court also noted that "[t]he potential for manipulation is . . . much greater where the shareholder-spouse is a sole or majority shareholder of the corporation and, by virtue of his ownership and control, has authority to dictate all corporate distributions." *Id.*

Indeed, the concerns about abuse, inequity, and manipulation by a parent of his assets and income has led to the apparent development of a general rule. It recognizes

7

the potential of including retained earnings of a business. That is, it neither demands their inclusion or exclusion when calculating a parent's child support obligation. Instead, it leaves the circumstances of each case to determine the outcome. Circumstances or indicia affecting the decision encompass, among other things: 1) the extent of the parent's ownership share in the business/corporation; 2) the parent's ability to decide whether corporate earnings should be retained or distributed; 3) corporate history regarding the retention or distribution of earnings; 4) the financial and operational needs of the corporation; 5) the excessiveness of the earnings retained when compared to the entity's financial and operational needs; and 6) the existence of evidence indicating the parent has engaged in actual manipulation of retained earnings. *In re Marriage of Moorthy*, 2015 IL App. 1st) 132077, 390 Ill. Dec. 672, 29 N.E.3d 604, 622; *accord In re Soesbe*, No. 2-19-0716, 2020 IL App. Unpub. LEXIS 584, at *11–12 (IL App. [2d Dist.] April 9, 2020) (order) (alluding to child support questions and mentioning those indicia when deciding whether to treat undistributed partnership earnings as income for calculating child support); *Tuckman v. Tuckman*, 308 Conn. 194, 211–12, 61 A.3d 449, 458–59 (2013) (noting relevant factors to include 1) the parent's level of control over corporate distributions, 2) the corporation's legitimate business interests and needs, and 3) evidence of an attempt to shield income by means of retained earnings); *J.S. v. C.C.*, 454 Mass. 652, 663–64, 912 N.E.2d 933, 942–43 (2009) (noting the same); *In re Marriage of Brand*, 44 P.3d at 330 (stating that "[s]ome . . . factors include past earnings history of the corporation, ownership share, . . . the shareholder's ability to control distribution or retention of the net profits of the business [and further noting that] . . . . In those cases where income can be manipulated because of the ability to control distributions,

8

heightened scrutiny should be exercised"). The purpose of earlier distributions is another relevant consideration. *See Bornhorst v. Bornhorst,* 28 Neb. App. 182, 2020 Neb. App. LEXIS 122, at *45–46 (Neb. Ct. App. Apr. 14, 2020) (holding that distributions made to a shareholder of a sub S corporation should not be included as income at least for those portions of the distribution intended to offset the shareholder's personal tax liability on his or her proportionate share of the S corporation's pass-through earnings). We find these authorities and rationale underlying their rule quite persuasive.

It is indisputable that Texas imposes a legal duty upon parents to financially support their children. *Ochsner v. Ochsner*, 517 S.W.3d 717, 724 (Tex. 2016) (explaining that child support is a duty owed by the parent to a child, not a debt owed to a parent). Similarly indisputable is that assets and the desire to preserve them may induce reputable parents to do irreputable things to the detriment of children. We view the rule espoused in *Brand* and its many progeny as an acceptable means to foster a child's well-being, further the duty of support, and minimize potentially adverse consequences when a parent's focus turns to preserving assets as opposed to caring for offspring.

The corporate fiction should not be available as a guise for parents to artificially reduce net resources when it comes time to calculate their support obligation. Indeed, our own legislature has taken steps to minimize such ruses. This is exemplified by it permitting a trial court to consider (in the child support equation) earning potential as opposed to actual earnings when a parent engages in intentional unemployment or underemployment. *See* TEX. FAM. CODE ANN. § 154.066(a) (stating that if the "actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support

guidelines to the earning potential of the obligor"). If nothing else, that statute encompasses both Texas policy requiring parents to support their children and prohibiting parents from engaging in means to shirk that obligation. In reality, assessing whether retained earnings should be included in the support equation differs little from assessing a parent's earning potential. Both contemplate assessment of whether the parent manipulated circumstances in a way that impacts his or her duty of support.

Thus, we hold that retained earnings may be included in the child support equation. Yet, inclusion is not automatic given the corporate fiction, the corporation's ownership of the asset, and the need to perpetuate healthy businesses to foster our economic existence. Instead, the decision turns upon assessment of relevant indicia, which include those listed above and all others that may be pertinent. The totality of those indicia, not simply one, is determinative; and, the aim in considering them is to determine whether retained earnings are truly part of the parent's income for purposes of child support just as they are for purposes of personal income tax calculations.

Here, the retained earnings considered by the trial court in its net resources' calculation were assets of Jeffery's Sub-S corporation. They amounted to $55,000. At the time of trial, the corporation had four employees, but Jeffery was its sole shareholder and officer. As such, he controlled corporate funds and made the decision whether to distribute retained earnings to himself or maintain them for corporate use. To paraphrase Steve Miller, it was his choice whether to "take the money and run."[3] Yet, little else appears of record, such as 1) the financial needs of the entity and its operational goals, 2) whether earnings were historically distributed or retained, 3) the amount of earnings, if

---

[3] STEVE MILLER BAND, *Take the Money and Run, on* FLY LIKE AN EAGLE (Capitol Records 1976).

10

any, previously distributed and the reason for their distribution, 4) the excessiveness of the retained earnings when compared to corporate needs, and 5) evidence of manipulation and like information. Without evidence touching upon those matters, the trial court found itself with a rather limited pool of data upon which to exercise its discretion. Indeed, one can reasonably interpret its decision as being founded simply upon the fact that Jeffery had control over his corporation and the power to decide whether earnings should be retained or distributed. That, in and of itself, ignores the law that the corporation actually owns the earnings. Sustaining the trial court's decision upon such a limited evidential foundation would be tantamount to adopting the immutable rule all jurisdictions strive to avoid.

Like the holding in *Smith v. Hickman*, we too conclude that the trial court abused its discretion here given the inadequate information before it upon which to exercise that discretion. So too do we find the error to be harmful given that the child support obligation imposed on Jeffery clearly factored into the equation the retained earnings of the Subchapter S corporation. Consequently, we sustain issue two.

The trial court's final judgment is reversed to the extent it imposed upon Jeffery the monthly child support obligation of $1,100. The issue of his child support is remanded for further proceedings. In all other things, the final judgment is affirmed.


Brian Quinn
Chief Justice