(88 P.3d 1241)
No. 90,265

IN THE MATTER OF THE MARRIAGE OF GEORGE M. UNRUH, *Appellee*, and LEANNA L. UNRUH, *Appellant*.

—

Opinion filed May 7, 2004.

*Timothy R. Keenan*, of Keenan Law Firm, P.A., of Great Bend, for the appellant.

*Brock R. McPherson* and *Jeff Lee McVey*, of McPherson & McVey Law Offices, Chtd., of Great Bend, for the appellee.

Before GREEN, P.J., LEWIS, J., and JOHN J. BUKATY, JR., District Judge, assigned.

LEWIS, J.: George M. and Leanna L. Unruh were married in 1981. Three children were born to the marriage, the oldest of whom has turned 18. They were divorced in 1998. The parties have renegotiated the child support being paid by George to Leanna on a number of occasions. In this particular instance, George filed a motion to reduce his child support from $2,100 to $1,497. The trial court granted George's motion, and Leanna appeals.

George's financial picture is rather complicated and of great importance in determining the proper amount of child support under the Kansas Child Support Guidelines, Supreme Court Administrative Order No. 128 (2003 Kan. Ct. R. Annot. 99) (Guidelines).

At the time of the divorce, George was the president of MidCon Oil Tools, Inc. (MidCon). He owned 62,208 shares of MidCon corporate stock, which was valued at $53,808. George was awarded all of the MidCon stock with the understanding that the income generated from the stock would be the basis for "child support in a fairly substantial amount to the minor children of the parties." Leanna was granted residential custody of the three children, and George was required to pay child support in the amount of $1,160 per month.

In 2001, the parties negotiated an increase in child support based on an increase in George's income and in the children's ages. The parties agreed that George should pay $2,100 per month effective July 1, 2001, and this amount was agreed to and made a part of the trial court's order.

In June 2002, George filed a motion seeking a downward modification in his child support after the parties' oldest child turned 18 and had graduated from high school. A hearing was held on George's motion. The principle issue was that of George's income distributions from MidCon and which of those distributions should be used in the calculation of child support. George was president of MidCon and received a salary as well as quarterly dividends from his stock.

George called as his principle witness Vaughn Goerl, a certified public accountant who had performed accounting services for MidCon. Goerl testified that George owned 29.7% of the corporate stock and that MidCon was a Subchapter S corporation set up to

avoid double taxation of its earnings. MidCon's income taxes are paid by its shareholders, who pay a proportionate share based on the percentage of stock owned.

According to Goerl, George was primarily the person who made the decisions for the corporation regarding how the corporation was handled for tax and accounting purposes. Goerl had never received any direction from any of the other stockholders and had never attended a stockholders' meeting. George and the balance of the stockholders determined the amount to be distributed. It was Goerl's estimate that over the life of the corporation, the distributions to the stockholders had been very close to 59%.

There were other items that had a bearing on George's net income from MidCon. For instance, MidCon is a service company for the oil industry, which has the potential to be volatile. For that reason, Goerl stated that 41% of the company's profits were reinvested in the company and it was important for MidCon to maintain 3 months' operating expenses in order to avoid borrowing money during "down months or down years." The net result is that 59% of the company's income was distributed to shareholders. Despite the fact that only 59% was distributed, the stockholders are liable for income taxes on 100% of the company's income. Goerl testified that the practice of retaining approximately 41% of the company's earnings had been a longstanding practice.

MidCon's fiscal operation had a significant impact on the amount of after-tax and after-corporate dollars that the shareholders realized. For instance, George reported that his share of the Subchapter S income for 2001 was $96,991, that he actually received 59% of that amount, $57,224.69, and that he paid taxes on the Subchapter S income which totaled $33,946.85, resulting in a net income of $23,277.84.

The trial court chose to compute George's Subchapter S income based on the 59% that he actually received, excluding the amount used to pay taxes on the corporation's income. The court then modified the child support payment to $1,497 per month for the two remaining minor children.

This appeal followed.

Leanna argues the trial court should have included all of the MidCon income attributable to George regardless of whether he actually received it. We do not agree.

Interpretation of child support guidelines is a question of law over which this court has unlimited review. *In re Marriage of Gurtner*, 31 Kan. App. 2d 613, 614, 69 P.3d 633 (2003). However, review of an order setting the child support amount is limited to determining whether there is substantial competent evidence to support the district court's findings. *In re Marriage of Brand*, 273 Kan. 346, 350, 44 P.3d 321 (2002). "Substantial evidence is that which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.]" *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003).

"The tax treatment of corporate distributions is controlled by state law." *Brand*, 273 Kan. at 350. K.S.A. 79-32,139 governs the taxation of Subchapter S corporate income and states the following:

"A corporation having an election in effect under subchapter S of the internal revenue code shall not be subject to the Kansas income tax on corporations, and the shareholders of such corporation shall include in their taxable incomes their proportionate part of such corporation's federal taxable income, subject to the modifications as set forth in K.S.A. 79-32,117, and amendments thereto, in the same manner and to the same extent as provided by the internal revenue code."

The *Brand* court gave the following summary of a Subchapter S corporation and the financial implications for shareholders:

"Although a Subchapter S corporation may distribute income, it is not required to do so. [Citation omitted.] Earnings are owned by the corporation, not by the shareholders. [Citation omitted.] Subchapter S corporations may accumulate profits, referred to as 'retained earnings.' Retained earnings are the net sum of a corporations's yearly profits and losses. [Citation omitted.]

"Subchapter S status provides an alternate method of taxing a corporation's income. [Citation omitted.] In a Subchapter S corporation, income tax is paid by the shareholders rather than by the corporation itself. [Citations omitted.] When the tax is paid by the individual, the corporation avoids income tax liability. [Citations omitted.]

"A Subchapter S corporation allocates various items of income to shareholders based upon the shareholder's proportionate ownership of stock. [Citation omit-

ted.] Allocations are itemized on an individual shareholder's Schedule K-1. [Citation omitted.]" 273 Kan. at 351.

The Kansas Child Support Guidelines are the basis for establishing and reviewing child support orders. District courts are required to follow the Guidelines when calculating child support. Guidelines § I. (2003 Kan. Ct. R. Annot. 99).

Domestic gross income is defined by the Guidelines as "income from all sources, excluding public assistance and child support received for other children in the custody of either parent." Guidelines § II. D. (2003 Kan. Ct. R. Annot. 100-01). Self-employment gross income is "income from self-employment and all other income." Guidelines § II. F. (2003 Kan. Ct. R. Annot. 102). Domestic gross income for the self-employed is self-employment gross income minus reasonable business expenses. Guidelines § II. H. (2003 Kan. Ct. R. Annot. 102). Reasonable business expenses are "those actual expenditures reasonable necessary for the production of income." Guidelines § II. G. (2003 Kan. Ct. R. Annot. 102).

There is no presumption that an individual's share of a Subchapter S corporate income should be included as income for purposes of calculating child support. A case-by-case inquiry should be made to determine what income is actually "received" when determining "Domestic Gross Income" for the self-employed under the Guidelines.

Courts have recognized that a potential problem with Subchapter S corporations is that shareholders could shield their income from child support calculations by retaining earnings in the corporation for long-term gain rather than taking the distributions as income for themselves which could be used for the benefit of their children. See *Brand*, 273 Kan. at 356-58.

In *Brand*, the mother filed a motion to modify child support in an effort to include Subchapter S corporate distributions received by the father as a minority shareholder in various Subchapter S corporations. The evidence presented, however, demonstrated that the father received only enough in distributions to cover his share of the income tax obligation for the Subchapter S corporations.

Further, the majority shareholders did not foresee that the distributions would be above the amount needed for income taxes in the future.

The *Brand* Supreme Court upheld the district court's decision not to include the distributions as income received under the Guidelines because the mother was unable to show that the father, as a minority shareholder, "manipulated corporate assets, decreased the amount of his salary to increase retained earnings, or acted in any way to shield income." 273 Kan. at 355. The court noted that a determination of whether to include corporate earnings or distributions as income is highly fact specific and the court should consider the following factors when deciding what amount, if any, of Subchapter S income should be included when calculating support: the past earnings history of the corporation, ownership share, and the shareholder's ability to control the distribution or retention of net profits in the business. In cases where the shareholder has the ability to control distribution, the court urged heightened scrutiny. The court also noted that "[a] corporation must sometimes necessarily retain profits, not everyone stands in a position to force distribution of a corporation's profits, and not all distributions to shareholders increase their ability to pay support." 273 Kan. at 359.

We believe that *Brand* is controlling on this issue. Leanna failed to show that George was anything more than a minority stockholder. As a result, he did not have the power to determine the amount retained in the corporation without the agreement of the other shareholders. In fact, George had no ability to control the decision to reinvest 41% of the corporate earnings in the company and to pay each stockholder the remaining 59% of earnings subject to the additional burden of paying the income tax. There is nothing in the record to indicate that George was somehow manipulating the Subchapter S corporation for his own benefit and to the detriment of his minor children. We affirm the trial court's decision not to count 100% of the MidCon earnings or distributions attributable to George as self-employment domestic income.

Leanna argues the district court erred when it used George's after-tax income from the MidCon distributions to determine his

income for child support calculations. George responds that he does not receive or benefit from the distribution funds used to pay the income taxes for MidCon; therefore, they should not be included in the calculations.

Neither party cites to any relevant cases to support their arguments, and there are no published Kansas cases that have addressed this issue. Few other states have addressed the issue of taxation on Subchapter S distributions and how it relates to the calculation of income for child support.

The standard of review is the same as previously stated in the issue above. See *Brand*, 273 Kan. at 350.

The Guidelines do not specifically address the issue of how the payment of corporate income taxes by a Subchapter S shareholder should be computed; however, the Guidelines state that federal and state income taxes are taken into consideration in the child support schedules as income that is not available for spending. "[A]lthough the charts use combined gross monthly income as one factor in determining child support, the entries in the schedules used to calculate the actual child support obligation are based upon after-tax income." Guidelines § II. C. (2003 Kan. Ct. R. Annot. 100).

It does not appear that the trial court's decision to exclude income taxes on the amount actually received by George was supported by substantial competent evidence. While the court was justified in excluding the 35% taxes paid on the $39,766.31 that was reinvested in the corporation and never available to George, the court was not justified in excluding the taxes George paid on the 59% distribution he received from MidCon when the child support schedules take into account the fact that income taxes will apply and reduce the available income for parents. By reducing George's income on the distributions he received to an after-tax amount, the district court caused the income tax burden to be considered and reduced two times, once by the court and once in the child support schedules.

The Guidelines do contemplate the reduction of self-employment gross income for income taxes as reasonable business expenses, but the amount is described only as the "additional self-

employment tax paid over and above the FICA rate." Guidelines § II. G. and H. (2003 Kan. Ct. R. Annot. 102).

Affirmed in part, reversed in part, and remanded for recalculation.