(193 P.3d 466)
No. 98,440

In the Matter of the Marriage of LISA L. MATTHEWS, *Appellant,* and BURKE LEE MATTHEWS, *Appellee.*

Opinion filed September 26, 2008.

*Karen Black,* of Salina, for appellant.

*Roger D. Struble,* of Blackwell, Blackwell, & Struble, Chtd., of Salina, for appellee.

Before BUSER, P.J., MALONE and STANDRIDGE, JJ.

STANDRIDGE, J.: Lisa L. Matthews appeals the district court's decision to exclude Subchapter S corporation distributions from her former husband's gross domestic income for purposes of calculating child support under the Kansas Child Support Guidelines. We reverse the district court's decision in this regard and remand with directions. In a claim unrelated to the S corporation distribution, the district court awarded a partial increase in child support, and, on appeal, Lisa asks this court to change the effective date of the modification. We affirm in part, reverse in part, and remand with directions.

## I. Facts

Lisa Matthews and Burke Matthews were divorced on June 2, 2004. They have three minor children. In the separation agreement, Burke agreed to pay $1,580 per month in child support. No child support worksheet was filed to support this financial agreement. The district court approved the parties' separation agreement on November 23, 2004.

On December 28, 2005, Lisa filed a motion to modify child support, citing an increase in child care costs. Based on financial information about Burke's income received by Lisa during discovery related to the motion to modify, Lisa filed an amended motion to modify child support on November 1, 2006. In the amended motion, Lisa alleged that after the divorce, Burke began receiving additional income in the form of tax-exempt interest, qualified dividends, and distributions from a Subchapter S corporation. Lisa

argued that this money should be included in Burke's income for purposes of calculating child support.

A hearing on the amended motion was held on January 2, 2007. Counsel proffered testimony on behalf of their respective clients and presented arguments. The court admitted joint exhibits: Burke's 2005 personal income tax return and a Stock Purchase Agreement for the purchase of shares in Berco, Inc. (Berco), a Subchapter S corporation.

The Stock Purchase Agreement was executed on December 31, 2004, a month after the district court approved the parties' separation agreement. In it, Burke contracted to buy 229 shares of Berco common stock from Kent Berkley, another stockholder, for $160,000. Burke paid $10,000 at the time the agreement was executed, and the remaining balance must be paid in full by December 31, 2011. To that end, Burke promised to pay Berkley at least 80 percent of any dividend received from the Berco stock toward the balance owed. In 2005, the first calendar tax year after executing the contract, Berco distributed $19,424 in dividends to Burke.

On January 18, 2007, the district court issued an order denying Lisa's amended motion. In its written opinion, the district court held the Berco dividend payments should not be included as income to Burke for purposes of calculating child support. More specifically, the court found the $19,424 in Berco dividend payments was unavailable to pay additional child support, because 80 percent of the dividend ($15,539.20) went to pay Burke's installment obligation, and the balance ($3,884.80) went to pay the tax liability on the dividends. In this order, the court also directed the parties to prepare a child support worksheet to determine whether there was a change in the parties' financial circumstances and, if so, whether such change would increase Burke's child support obligation by 10 percent or more. The court further ordered that any increase in child support would be effective as of December 1, 2006, based upon the filing date of the amended motion to modify child support.

Lisa filed a motion to reconsider with regard to the Berco dividends, as well as with regard to the court's failure to include as

income the tax-exempt interest and qualified dividends listed on Burke's tax return. On February 21, 2007, the district issued another order recalculating Burke's gross income to include the referenced tax-exempt interest and qualified dividends. In this order, however, the court specifically noted that it was not altering its decision to exclude the Berco dividends as income to Burke for purposes of calculating child support. Again, the court directed the parties to prepare a child support worksheet to determine whether there was a change in the parties' financial circumstances and, if so, whether such change would increase Burke's child support obligation by 10 percent or more. The court also reiterated that any increase in child support would be effective as of December 1, 2006.

Lisa appeals, arguing that the district court erred (1) in excluding the Berco dividends from Burke's income for purposes of calculating child support and (2) by setting December 1, 2006, as the effective date for any change in child support.

## II. Standard of Review

The standard of review of a district court's order determining the amount of child support is whether the district court abused its discretion, while interpretation and application of the Kansas Child Support Guidelines (Guidelines) are subject to unlimited review. *In re Marriage of Atchison*, 38 Kan. App. 2d 1081, 1085, 176 P.3d 965 (2008). To that end, an appellate court reviews the district court's findings of fact to determine if those findings are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. 38 Kan. App. 2d at 1085.

In this appeal, Lisa does not challenge any of the district court's factual findings. Instead, Lisa alleges the district court erred—as a matter of law—in determining that the Berco dividends were not income as defined by the Guidelines. Because the interpretation of the Guidelines is a question of law, our review of the issue presented is unlimited. See *Atchison*, 38 Kan. App. 2d at 1085.

III. *Discussion*

A. *Are the Berco Dividends Income for Purposes of Child Support?*

Before discussing the ultimate issue presented—whether the Berco dividends are income for purposes of calculating child support—we find it helpful to briefly review the unique attributes of a Subchapter S corporation.

1. *The Subchapter S Corporation*

A Subchapter S corporation, or simply S corporation, may not have more than 100 shareholders, may not have a shareholder who is not an individual (with certain exceptions), may not have a nonresident alien as a shareholder, and may not have more than one class of stock. 26 U.S.C. § 1361(b)(1) (2007). S corporations are designed to avoid double taxation on corporate earnings. To that end, shareholders of S corporations receive the benefit of what is known as "pass-through taxation." See Black's Law Dictionary 1500 (8th ed. 2004). In other words, the S corporation's income is passed through to its shareholders so that the shareholders are taxed on the income at the end of the year, but the S corporation as an entity is not taxed on the income. This method of taxation differs from the double taxation that results in a more traditional C corporation. In a "C corporation," the corporation as an entity is taxed on its income and then its shareholders are again taxed on the income that they receive through dividends. Black's Law Dictionary 365 (8th ed. 2004).

In an S corporation, the shareholders report the corporation's income on their individual tax returns in an amount proportionate to their ownership interest. K.S.A. 79-32,139. Although the shareholders pay the taxes on the income, the income is still owned by the corporation, not by the shareholders. Accordingly, it is the corporation—and not the shareholders—that decides whether, and in what amount, the income is distributed or retained within the corporation. S corporations may retain some, or all, of the income. This sum is referred to as "retained earnings." See Black's Law Dictionary 548 (8th ed. 2004). S corporations may distribute some, or all, of the income. This sum is referred to as a "corporate dis-

tribution." See Black's Law Dictionary 508 (8th ed. 2004). Notably, income taxes are assessed to the shareholder on the entire amount of income earned by the corporation (in an amount proportionate to his or her ownership interest); it is completely irrelevant to this determination whether the income is retained or distributed. See K.S.A. 79-32,139. Thus, it is possible for S corporation shareholders to be taxed on income that they never received.

### 2. *The Kansas Child Support Guidelines*

The Guidelines define "domestic gross income" as "income from all sources, including that which is regularly or periodically received, excluding public assistance and child support received for other children in the residency of either parent." Guidelines § II. D. (2007 Kan. Ct. R. Annot. 108-09). As it is used within the Guidelines, the term "income" has been interpreted to mean " 'every conceivable form of income, whether it be in the form of earnings, royalties, bonuses, dividends, interest, maintenance, rent, or whatever.' " *In re Marriage of Callaghan*, 19 Kan. App. 2d 335, 336, 869 P.2d 240 (1994) (quoting 2 Elrod, Kansas Family Law Handbook § 14.024, p. 14-11 [1990]).

### 3. *Relevant Kansas Case Law*

Kansas courts do not presume that an individual's share of an S corporation's income should be included as income for purposes of calculating child support. *In re Marriage of Brand*, 273 Kan. 346, 356, 44 P.3d 321 (2002). Identifying what income is "received" for the purpose of calculating child support depends on a factual analysis applied on a case-by-case basis. 273 Kan. at 356. There is no bright-line rule, because there are a variety of circumstances unique to S corporations that makes this determination difficult. 273 Kan. at 358. In *Brand*, our Supreme Court gave the following examples of why this determination is so difficult: (1) it may be necessary for the corporation to retain all profits during certain years, (2) not every shareholder can force the corporation to make distributions, and (3) not all distributions increase the shareholders' ability to pay support.

The *Brand* court provided guidance on how to determine whether S corporation income should be included in each individual case. Under a section titled "Factors for Consideration in Determining Income" the court identified the following factors: (1) the corporation's past earnings history, (2) ownership share, and (3) the shareholder's ability to control distribution or retention of the net profits of the business. It emphasized that heightened scrutiny should be exercised if the shareholder can control distributions. 273 Kan. at 359-60. The *Brand* court also stated that "[a]n overview of the entire factual history of retained earnings and distributions is recommended." 273 Kan. at 357.

### 4. Analysis

The district court here did not make any determinations regarding the corporation's past earnings, its history of distributions, or Burke's ownership share in the S corporation. This is because, completely unlike the facts in *Brand*, the only issue before the court in this case is whether the dividends *that were actually distributed* to Burke are income for purposes of calculating child support. The *Brand* factors referenced above are aimed at determining whether a shareholder is attempting to hide money in the form of *retained earnings income* within the S corporation to avoid child support payments.

Instead of the *Brand* factors, the district court here focused its analysis on what happened to the monetary distribution after the income was disbursed to Burke. In so doing, the court determined the monetary dividend distribution was not "received" by Burke and was not "available" to Burke for purposes of paying child support. We disagree.

In order to accurately analyze whether the total distribution received by Burke from Berco is income for purposes of calculating child support, we will discuss separately (a) that portion of the distribution that Burke used to pay Berkley for the stock pursuant to the terms of the Stock Purchase Agreement; and (b) that portion of the distribution that Burke used to pay taxes on his share of Berco's income.

### (a) That Portion of the Distribution Used to Pay Berkley for the Stock

We find that portion of the distribution made to Burke and used to pay Berkley for the stock is income for purposes of calculating child support. As a preliminary matter, the distribution meets the definition of domestic gross income set forth in the Guidelines: "income from all sources, including that which is regularly or periodically received, excluding public assistance and child support received for other children in the residency of either parent." Guidelines § II. D. (2007 Kan. Ct. R. Annot. 108-09). As it is used within the Guidelines, we have interpreted income as " 'every conceivable form of income, whether it be in the form of earnings, royalties, bonuses, dividends, interest, maintenance, rent, or whatever.' " *Callaghan,* 19 Kan. App. 2d at 336.

Notably, subsequent "availability" of income received is not mentioned anywhere in the Guidelines. Thus, the fact that Burke chose to use his income to pay for an asset he purchased does not change the character of the money from "income" to "non-income" for purposes of calculating child support under the Guidelines. Burke certainly did not seek to exclude from his income—for purposes of calculating child support—the $10,000 he paid to Berkley towards the stock at the time the Stock Purchase Agreement was executed. And, regardless of how much or how little he actually receives in income as dividends from the Berco stock, Burke must pay the remaining balance of the sums owed by December 31, 2011. Thus, the Stock Purchase Agreement clearly envisions that Burke may have to pay for the stock with income other than that he receives from Berco as distributions. To that end, if Burke used income he received from his regular paycheck to pay Berkley for the stock, the paycheck income would not somehow become "unavailable income" for purposes of calculating child support.

We find the Stock Purchase Agreement is no different than income received that is pledged toward a home mortgage or a note to purchase a car. In those cases, the income received and pledged toward the home mortgage or the car payment is "not available"

to pay child support in the sense that the dollars have been allocated to specific obligations. At the end of the day, however, the income received goes towards purchase of an asset that ultimately increases the net worth of the individual making the payment.

In making this finding, we recognize that Burke would have no Berco income but for the purchase of the Berco stock at issue. Such a scenario, however, is no different than purchasing on credit any other asset that produces income. Consider, for example, if Burke would have taken out a loan from a bank to purchase a rental home. In such a circumstance, we would reject an argument that rental income received by Burke was not income for purposes of calculating child support simply because Burke was utilizing the rental income received from his tenant to pay back the bank loan. This is because the bank loan, as it is paid back over years, increases Burke's net worth in the rental home. By the time his children are at the age of majority, Burke would be the owner of valuable real estate debt free and at the direct expense of his children. For these reasons, we find that portion of the distribution made to Burke and used to pay Berkley for the stock is income for purposes of calculating child support.

### (b) That Portion of the Distribution Used to Pay Taxes on Berco Income Attributed to Burke

This court previously has held that distributions used to pay income tax on money distributed by an S corporation also should be included in gross income for purposes of calculating child support. *In re Marriage of Unruh,* 32 Kan. App. 2d 770, 88 P.3d 1241 (2004). In *Unruh,* the respondent argued that he did not receive the benefit from an S corporation's distributions because the distribution was designed to pay the income tax generated by the corporation. The district court excluded the entire distribution that the shareholder claimed was used to pay the taxes. This court reversed, distinguishing (1) the distribution used to pay income tax on the corporation's *retained* earnings from (2) the distribution used to pay income tax on the money *distributed.* This court held that only the portion of the distribution used to pay income tax on the *retained* earnings should be excluded. 32 Kan. App. 2d at 776.

In so holding, this court reasoned that, under the Guidelines, federal and state income taxes already are considered in the child support schedules as income that is not available for spending because the charts used to calculate gross monthly income are based upon after-tax income. "By reducing [the father's] income on the distributions he received to an after-tax amount, the district court caused the income tax burden to be considered and reduced two times, once by the court and once in the child support schedules." *Unruh*, 32 Kan. App. 2d at 776.

We find *Unruh* to be directly on point regarding this issue. Accordingly, we hold that portion of the distribution used to pay taxes on Berco income distributed to Burke is income for purposes of calculating child support under the Guidelines. Because there is no evidence before us regarding how much of the distribution went to pay income tax on Berco's *retained* earnings attributed to Burke (if any) and how much of the distribution went to pay income tax on the income actually *distributed* to Burke, we must remand for such a determination by the district court.

### B. The Effective Date for Any Change in Child Support

Lisa argues the child support modification order should become effective on January 1, 2006, not December 1, 2006. In support of this argument, Lisa maintains her original motion to modify child support was filed December 28, 2005, and that K.S.A. 60-1610(a) requires any subsequent modification order to date back to 1 month after the motion to modify was filed. We disagree.

Interpretation of a statute is a question of law over which this court has unlimited review. *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

K.S.A. 2007 Supp. 60-1610(a) states in part:

"The court may modify or change any prior order . . . within three years of the date of the original order or a modification order, when a material change in circumstances is shown, irrespective of the present domicile of the child or the parents. . . . The court may make a modification of child support retroactive to a date at least one month after the date that the motion to modify was filed with the court."

The statutory language used here demonstrates that the legislature intended to give the district court broad authority to set the

effective date of the modification. The statute restricts the district court from setting the effective date earlier than 1 month after the motion was filed. The statute provides the district court with discretion, however, to set the effective date at any time after that month.

"Judicial discretion will vary depending upon the character of the question presented for determination. Generally, the trial court's decision is protected if reasonable persons could differ upon the propriety of the decision as long as the discretionary decision is made within and takes into account the applicable legal standards. However, an abuse of discretion may be found if the trial court's decision goes outside the framework of or fails to properly consider statutory limitations or legal standards. [Citation omitted.]" *State v. Shopteese*, 283 Kan. 331, 340, 153 P.3d 1208 (2007).

Lisa's original motion was unrelated to the primary reason resulting in modification. Therefore, it was reasonable for the district court to set the effective date 1 month after Lisa's amended motion. We find no abuse of discretion and affirm the decision below.

Affirmed in part, reversed in part, and remanded with directions.