NOT DESIGNATED FOR PUBLICATION

No. 119,312

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of:

SASWATI GUHA,
*Appellee/Cross-appellant*,

and

AMIT S. GUHA,
*Appellant/Cross-appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed June 5, 2020. Affirmed.

*Amit S. Guha*, appellant/cross-appellee pro se.

*Matthew K. Mantyla*, of Mantyla Family Law, LLC, of Topeka, for appellant/cross-appellee.

*Jody M. Meyer*, of Lawrence, for appellee/cross-appellant.

Before GARDNER, P.J., BUSER, J., and LAHEY, S.J.

BUSER, J.:  Saswati Guha filed for divorce from Amit Guha in 2012. For many years the parties have contentiously litigated child support issues. In the meantime, their son is now an adult. Amit appeals the district court's child support order on a variety of grounds. Saswati cross-appeals arguing the district court erred in calculating Amit's income for child support purposes. We affirm the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

The Guha's divorce was finalized in 2013. The parties have one son, H. G., born in 2000. In May 2013, Amit and Saswati entered into a Marital Separation and Settlement Agreement which established a parenting plan and child support payments. Because H.G. primarily lived with Saswati at the time, the agreement provided that Amit would pay child support of $2,646 each month. In the property settlement, Saswati kept the marital residence and received a $2 million property equalization award. Amit was ordered to pay spousal maintenance to Saswati of $5,850 per month for 88 months.

In December 2013, Saswati filed a motion to modify child support, asserting that Amit's 2012 tax returns showed an increase of $147,000 in gross annual income. Saswati asked that the modification be applied retroactively. In response, Amit contested using the extended income formula in calculating child support payments, argued for utilizing the parenting time adjustment, and opposed not imputing income to Saswati because of her advanced degrees and work experience.

A hearing was never held but subsequently the parties executed a handwritten agreement. Dated February 24, 2014, the agreement stated that Amit would become the primary residential custodian until September 1, 2014, and during this time, he would not pay child support, but he would pay all direct expenses. The document was signed by Amit and Saswati but it was not filed with the district court until August 29, 2014.

The parties formalized the handwritten agreement, and a journal entry was filed by the district court. It read:

"a) The parties' child, [H.G.], will change to primary residency with [Amit] on March 1, 2014 until September 1, 2014 when the child returns to primary residency with [Saswati]. The parenting time as stated in the parties' Property Settlement Agreement shall be applicable for the non residential parent.

2

"b) The parties agree to a child support amount to be paid of $3,200 per month by [Amit] to [Saswati] when the child is in [Saswati's] primary residency through age 18. When [Saswati] receives child support of $3,200 commencing on September 1, 2014 then she shall pay the direct expenses for extracurricular activities. When the child is in the primary residency of [Amit], [Amit] won't pay child support but will pay all direct expenses. [Saswati] will not owe or pay any child support payment or obligation to [Amit]. Commencing on February 24, 2014 [Amit] will pay all the uncovered medical expenses and insurance for the child and [Saswati] will pay [Amit] her twenty two (22%) of uncovered expenses."

On August 20, 2014—28 days before the district court entered the order—Amit filed a motion with the district court to modify the agreement. Amit sought a longer period of residential custody with H.G. and a modification of child support.

At a status conference on September 16, 2014, Amit's attorney stated the parties could not agree on Saswati's parenting time. In response, the district court ordered Saswati to have parenting time after school on Tuesday until Thursday morning every week, every Friday afternoon to Saturday morning; on the first weekend of each month; and to have H.G. from Friday to Sunday until 6 p.m. The district court took Amit's August 20, 2014 motion to modify child support under advisement pending an evidentiary hearing.

A hearing was held on January 9, 2015. At that time, the district court continued the current parenting plan on a temporary basis, and the child support issues were continued over for later determination. Amit filed a motion to modify the journal entry memorializing the January 9, 2015 hearing. Among other issues, Amit reprised his argument that given Saswati's education and experience, it was unfair to impute a minimum wage as her income for child support purposes.

Following an August 20, 2015 trial on custody issues, the district court ordered the parents to share custody of H.G. on a 50/50 basis. Due to numerous continuances, in part, due to Amit's failures to comply with discovery requests, the child support issues were not heard until November 2016. A journal entry was filed on September 28, 2017.

In relevant part, the journal entry memorialized that the district court adopted October 1, 2014, as the date the parties began exercising shared residential custody. It noted that all parties agreed a shared expense plan was not feasible due to the inability of the parties to communicate with each other. On January 25, 2017, the district court issued a revised ruling finding that Amit's annual income was $495,222 for child support purposes. The district court found:

> "Respondent's business is a subchapter S corporation. Respondent pays himself a salary and runs nearly all of his expenses through the business, including his maintenance payments and car payment. He also reinvests an extraordinary amount of cash back into the business as the 'rainy day' fund. Mr. Guha is a cautious man, however, the Court finds a yearly set aside of 30% of the income is more than reasonable and that is the method the Court used to arrive at $495,222.00 as his gross income for purposes of the payment of alimony and child support."

The district court determined that Saswati's income was $104,090. This included maintenance payments, interest payments, and attributed income of $30,000 per year.

Subsequently, the district court advised the parties by email that it had erred in basing child support using 2014 tax returns rather than 2015 tax returns. Upon our court's review, we remanded the matter to the district court to file a journal entry with the appropriate corrections on June 20, 2018.

On remand, the parties expressed disagreement with the district court's calculations based on the 2015 tax returns. Saswati filed a motion to alter or amend the

4

judgment, and for additional findings regarding child support. To resolve the issues, the district court held a bifurcated hearing on January 17, 2018 and March 13, 2018. The district court adopted a child support worksheet on April 11, 2018. On May 8, 2018, Saswati filed a motion for garnishment asking the district court to order Amit to pay her $52,739.50 in child support arrearages. The motion was granted.

The district court memorialized its findings of fact and conclusions of law in a journal entry dated November 5, 2018. In relevant part, it based Amit's income for purposes of calculating child support on his 2015 tax returns. Although Amit objected to the use of the extended income formula in calculating the child support, the district court ruled that its use was appropriate, and it would not create an excessive amount of child support considering the parents' standard of living that H.G. has enjoyed. Moreover, the district court noted that it historically had used the extended income formula in this case.

After the January 17, 2018, hearing, the district court found that Amit's gross domestic income for purposes of child support was $686,909 per year. Among other calculations, this figure was based on $737,275 in annual income from Amit's Subchapter S corporation but with a reduction of 30% for retained earnings.

As recounted by the district court in the journal entry, it heard additional arguments on March 13, 2018. At that time, Amit requested that the Court deduct 30% of his personal income taxes from the income used to calculate child support as it is akin to self-employment or alternatively it is a business expense that he should be allowed to deduct. The district court declined, in part noting that it was "not re-opening the trial and has no evidence at this time to support the request." For her part, Saswati asked that Amit's state income tax refund be included as income. The district court declined the request.

Amit filed a notice of appeal, and Saswati filed a cross-appeal.

Amit contends the district court erred in using the equal parenting time formula in computing child support retroactively to October 2014. He claims the parties did not begin an equal parenting time plan until after August 2015 when the district court ordered the parents to begin 50/50 residential custody. Amit asserts that from October 2014 to August 2015, Saswati only exercised 35% parenting time—not equal parenting time.

On the other hand, Saswati argues that the parties repeatedly acknowledged having nearly equal parenting time between October 2014 and August 2015 and that parenting time does not have to be exactly 50% for the formula to apply.

Our standard of review provides:

"We review a district court's order determining the amount of child support for an abuse of discretion, while the interpretation or application of the Kansas Child Support Guidelines is a question of law subject to unlimited review. Judicial discretion is abused if the judicial action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact.

"As an appellate court, we review the district court's findings of fact to determine if those findings are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. In doing so, we will not weigh conflicting evidence, pass on the credibility of witnesses, nor redetermine questions of fact. Finally, 'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citations omitted.]" *In re Marriage of Skoczek*, 51 Kan. App. 2d 606, 607-08, 351 P.3d 1287 (2015).

The record supports Saswati's position that the parties operated under an equal or nearly equal parenting time plan from October 1, 2014 and beyond. In a September 2014 hearing, Saswati sought an increase in parenting time. The district court ordered Saswati to begin exercising parenting time every Tuesday to Thursday morning, Friday afternoon

6

to Saturday, and the first full weekend of each month. This parenting time schedule remained until August 20, 2015 when the district court ordered the parents to enter a 50/50 shared residential custody arrangement.

At the August 2014 hearing, Saswati testified that parenting time had been 50/50 over the last year. This testimony was uncontroverted. The district judge validated this testimony by stating, "I believe that the parties have nearly a shared custody arrangement and should maintain that shared custody arrangement." Later, at the child support trial, Saswati's attorney referred to the arrangement from October 1, 2014 to August 20, 2015 as a 50/50 parenting plan. The district court agreed, stating the arrangement was "basically almost a shared custody or close to that. Yes." At the child support trial, when asked if they shared a 50/50 plan or something close to it, Amit acknowledged it was more like a 40/60 arrangement.

On appeal, Amit calculates that Saswati only exercised parenting time 35% of the time, but the district court did not abuse its discretion in finding Saswati's testimony more persuasive. Moreover, Kansas caselaw underscores that these judicial assessments are not matters requiring mathematical precision:

> "We must point out that these matters are not subject to a precise division of time and money for child support. These are not computations that must be made with scientific accuracy down to the penny. Rather, they arrive as a result of the application of child support guideline principles and the adaptation of guideline models that result in an equitable award. Each case is different. Each parent's circumstances are unique. All children's needs differ. The judicial eye and hand must fill in the final blanks, not a computer program." *In re Marriage of Skoczek*, 51 Kan. App. 2d at 613.

In sum, aside from Amit's personal calculations, he has not provided a basis why Saswati's parenting time may not be considered nearly equal. Because the parties were

sharing equal or nearly equal parenting time as of October 1, 2014, the district court did not abuse its discretion in applying the equal time formula retroactively to that date.

Amit also complains that the district court abused its discretion by applying any shared expense formula because he paid all the direct expenses. However, the Kansas Child Support Guidelines § III.B.7 (2019 Kan. S. Ct. R. 90, 92) (Guidelines) states:

> "Parents who share their children's time equally or nearly equally but do not want or are not able to agree to share direct expenses should consider using the equal parenting time formula.
>
>   . . . .
>
> "III.B.7.b. Equal Parenting Time Formula
>
>   . . . .
>
> "The equal parenting time formula is discretionary with the court and may be used to set child support when the court determines that: 1) a shared residential custody arrangement is in the best interests of the minor child, 2) the parents share the child's time equally or nearly equally, and 3) one or more of the following conditions apply:
>
>   i. the parties either do not agree to use the shared expense formula, or
>
>   ii. applying the shared expense formula would place the parent who would otherwise be designated to pay the direct expenses without sufficient funds to be responsible for all direct expenses, or
>
>   iii. applying the shared expense formula is not in the best interests of the child for other reasons."

Here, the equal parenting time formula applied because the parties did not agree to use the shared expense formula. The district court found, and both parties agree, there is considerable tension between the parties, and they are unable to agree on child support matters. Because the parties are unable to agree on sharing direct expenses, the district court found it was in H.G.'s best interests not to share expenses.

In applying the formula, the district court ordered that Amit pay the direct expenses. According to the Guidelines § III.B.7.b., a district court should consider the following factors to determine which parent shall pay the direct expenses:

> "a.  Historical roles of the parties for the children.
> "b.  Familiarity of parties with purchasing needs of children.
> "c.  Demonstrated performance under previous EPT or shared expense formula, if applicable.
> "d.  Demonstrated responsibility with money.
> "e.  Ability of party to cooperate with other party.
> "f.  Demonstrated payment of historical percentages of child's medical/dental bills.
> "g.  Relative incomes of the parties."

Applying these seven factors validates the district court's ruling. The district court explicitly found that Amit had historically paid for all of H.G.'s direct expenses without requesting payment from Saswati, in addition to paying H.G.'s health insurance and medical bills. Saswati testified that she pays for most of H.G.'s clothes, shoes, and entertainment. The district court found the majority of Saswati's expenses are indirect whereas Amit's are considered direct expenses. In addition, Amit has a larger percentage of income than Saswati. As a result, the district court properly applied the Guidelines and did not abuse its discretion in applying the equal parenting time expense formula in calculating child support.

Briefly, Amit also complains that Saswati was required to file a domestic relations affidavit with any motion to modify child support. Because of the ongoing nature of the hearings, however, it was unclear to both parties, including the district court, whether a motion to modify child support was still pending at the time child support evidence was presented. Regardless, Saswati filed an affidavit on the day of the child support trial and

testified that she also filed one the year before. Both parties agreed that child support issues needed to be decided.

In summary, upon our consideration of these issues, we find no error in the district court's application of the Guidelines. Additionally, there was substantial competent evidence to support the district court's conclusions of law.

CALCULATION OF INCOME FOR CHILD SUPPORT PURPOSES

For this issue, Amit presents four arguments: (1) The district court erred in using the extended income formula for child support because it failed to make the requisite calculations with and without the formula; (2) the district court arbitrarily picked 30% as the amount to be deducted from his Subchapter S corporation income; (3) the district court erred in failing to exclude 30% of the income taxes he paid for the business; and (4) the district court erred in calculating Saswati's income. Each issue will be separately addressed.

Our standard of review:

"The standard of review of a district court's order determining the amount of child support is whether the district court abused its discretion, while interpretation and application of the Kansas Child Support Guidelines are subject to unlimited review. Use of the guidelines is mandatory, and failure to follow the guidelines is reversible error. Any deviation from the amount of child support determined by the use of the guidelines must be justified by written findings in the journal entry, and failure to make such written findings is reversible error. [Citations omitted.]" *In re Marriage of Leoni*, 39 Kan. App. 2d 312, 317, 180 P.3d 1060 (2007).

*Use of the extended income formula to calculate Amit's income*

Amit contends the district court erred in using the extended income formula to calculate child support because it failed to calculate the child support with and without using the formula. He also claims the use of the formula created a windfall for Saswati. In response, Saswati argues the parties have been using this formula since the couple divorced in 2012, and Amit never objected to its use until just before the district court entered the final child support order. Saswati also argues the district court considered all the relevant factors in applying the formula.

The Guidelines provide that when computing child support income, courts consider a broad range of income. Guidelines § II. D. (2019 Kan. S. Ct. R. 85). The Guidelines further state that an extended formula may be used when the parents of a child have a combined income beyond the child support schedule.

> "[The] use of the extended-income formula 'is discretionary and does not establish a rebuttable presumption as to the level of appropriate support.' Nonetheless, [*In re Marriage of Patterson*, 22 Kan. App. 2d 522, Syl. ¶¶ 1 and 2, 920 P.2d 450 (1996)] tells us that the extended-income amount 'must be considered by the trial court when income exceeds the child support schedules.'" *In re Marriage of Leoni*, 39 Kan. App. 2d at 321-22.

The current schedule contemplates a gross monthly income up to $15,500 before it recommends applying the extended income formula.

> "If the combined income exceeds the highest amount shown on the schedules—$15,500 a month—the district court should exercise its discretion by considering what amount of child support should be set in addition to the highest amount on the schedule. KCSG § III.B.3. (2019 Kan. S. Ct. R. 88)." *In re Marriage of Whildin*, No. 119,489, 2019 WL 3210229, at *8 (Kan. App. 2019) (unpublished opinion).

11

Although the parties dispute the precise calculation of income, Amit's income alone obviously exceeds $15,500 per month. Neither party challenges this fact. As a result, the district court was required to consider using the extended income formula. But Amit complains the district court was required to make specific findings comparing the extended income formula to the regular income schedule. Amit does not favor us with on-point legal precedent that mandates such a comparison.

Under the Guidelines, in deciding whether to use the extended income formula in a given case, "the district court must consider the extended income formula and balance several factors in order to determine 'the standard of living the child would have enjoyed absent parental separation and dissolution and also to ensure adequate support for upbringing the child without allowing windfalls.'" *Ottley v. Ottley*, No. 111,925, 2015 WL 5036766, at *3 (Kan. App. 2015) (unpublished opinion).

In *Ottley*, the Father argued that Mother had considerable income and he should not be expected to pay child support on top of paying the direct expenses because it would create a windfall for the Mother. On appeal, our court disagreed:

> "Contrary to [Father's] argument, Kansas law does not focus solely on a child's demonstrable needs to guide a district court's discretionary application of the extended income formula. The court must balance several factors in order to accomplish fairness and prevent a windfall. Here, the district court considered the financial resources and needs of both parents in deciding to apply the extended income formula to its calculation of child support. Although both parties each have considerable incomes, the court drew reasonable inferences from the evidence to conclude that failure to use the extended income formula in this case would lower [the child's] standard of living in [Mother's] home. [Citations omitted.]" *Ottley*, WL 5036766, at *5.

In this case, although the district court did not compute Amit's child support payments without the formula, such a comparison was not required. Nevertheless, the

12

district judge's ruling makes clear that consonant with *Ottley*, it balanced H.G.'s standard of living against a potential windfall based on the parties' financial situation:

> "I seem to remember that what I need to consider with the extended income formula really is—doesn't it come down to the two-pony rule or the three-pony rule? I think that is what the case law addresses when using that. And that is sort of a shorthand for windfall or excessive payment of child support. . . . [T]he thought is that the child should have the same standard of living from two parents or a parent who has a substantial income while the parents are divorced, that that child would have if the parents lived together in the same household.
>
> "But then the question becomes at what point is that child support simply accepted. How many ponies should you buy your child based upon the child support that's ordered paid?
>
> . . . .
>
> "[T]he testimony that I heard as far as miscellaneous expenses, both of the parents have been extremely generous with this child. . . . On the other hand, I don't think that basically $1,000 a month violates the two-pony rule, and I have historically in this case applied the extended income formula. . . . There was a reason for that extended income formula. I think this case fits that perfectly. . . . [A] thousand plus is not an excessive amount of child support in this situation considering the sort of standard of living both of these parents have provided for this child."

When applying the extended income formula, a district court has considerable discretion. Here, the district court considered all the evidence, including the parties' income, their historical use of the formula, and H.G.'s standard of living. The record is replete with testimony and exhibits, and the district court drew reasonable inferences from the evidence presented. We find no error in the district court's conclusion of law or findings of fact.

*Including Income from Amit's Subchapter S Corporation*

Amit challenges the district court's findings that, for purposes of calculating child support, in addition to his salary, his gross domestic income also included income from his subchapter S corporation. Because only 30% of the corporation's profits was considered retained earnings, the district court included the remaining 70% as Amit's gross domestic income. Amit argues this ruling was arbitrary because he presented expert testimony to show that retaining all the corporation's profits as retained earnings was typical for the computer software industry.

Amit claims he should not have to pay any child support. However, if he must pay child support, he asserts the district court should have calculated his personal salary paid by the corporation and the Saswati's maintenance paid from the corporation as his gross domestic income. Amit requests that the remaining 70% of corporate profits be considered retained earnings—excluded from his gross domestic income.

In the district court, Saswati countered that all of Amit's corporate income should be considered gross domestic income. But on appeal, Saswati essentially accepts the district court's 30% finding as appropriate given the expert testimony presented. Although Saswati argues that the district court should have included the entire amount of Amit's retained corporate earnings as gross domestic income, she acknowledges the district court's findings are supported by substantial competent evidence.

The district court heard evidence from two certified public accountants retained by the parties who provided expert testimony based on the 2015 tax year. These experts provided dramatically different opinions regarding the amount Amit's company should be retaining as earnings.

The district court had considerable financial information in order to make a ruling. Amit's Subschapter S corporation's 2015 tax return showed the business had $1.7 million in gross receipts. After deducting wages and expenses, Amit's company showed ordinary business income of $737,275. In 2015 Amit placed about $700,000 into his Subchapter S corporation as retained earnings (cash reserves/rainy day fund). This brought the corporation's total cash reserves by 2015 to $1.2 million.

Amit testified that he wanted to retain in cash reserves, three to five times the amount of his operating expenses. Because the expenses were about $1 million in 2015, his goal was to retain $1 to $3 million in cash reserves. Amit testified that his company retains large amounts of cash for competitive and expansion purposes, and payment of research and development expenses. He opined that this was not unusual for most software companies.

Amit's financial expert, Chris Kohart, testified that Amit's goal to retain cash reserves in an amount of three to five times the corporation's expenses was more typical of what a Fortune 500 company—such as Google or Microsoft—would retain as earnings. But Kohart did not offer an opinion on a specific percentage of cash Amit's company should be retaining as earnings.

On the other hand, Saswati's accounting expert, Terry Garrett, in analyzing Amit's figures, compared Amit's corporation to other similar-sized companies. Garrett opined that out of the $1.2 million in cash reserves, 10% of that amount—$120,000—should be held as cash reserves. Garrett noted that Amit had little debt and large sums of cash, which meant that his corporation's debt to asset ratio was "outside the norm of the industry."

In Garrett's opinion, all of Amit's business income should be considered taxable income for child support purposes. Garrett testified that the distribution section from the

15

corporation's 1120-S tax return was missing and it was unclear what distributions were made to Amit. Garrett said that many of the profit and loss statements and tax statements were confusing and did not make sense. He testified that Amit was retaining cash at a rapid rate and he believed Amit was using the cash reserves as a personal savings account.

After considering the testimony, the district court ruled that, for purposes of calculating child support, in addition to Amit's salary, his gross domestic income should include 70% of the profits from his subchapter S corporation. In other words, the district court ruled that Amit could retain 30% of the corporation's profits as retained earnings.

Kansas appellate courts have considered how to evaluate income from a subchapter S corporation for child support purposes. Generally, "a determination of whether to include subchapter S corporate earnings, profit, or distributions as income is highly fact sensitive." *In re Marriage of Leoni*, 39 Kan. App. 2d at 318. There is no presumption that an individual's share of subchapter S income should be included as income for child support purposes, and a case-by-case inquiry should be made to determine what income is actually received when determining an individual's domestic gross income. *In re Marriage of Unruh*, 32 Kan. App. 2d 770, 774, 88 P.3d 1241 (2004). When the individual with the support obligation is able to control the retention and disbursement of funds by the corporation, he or she has the burden of proving that such actions were necessary to maintain or preserve the business. *In re Marriage of Brand*, 273 Kan. 346, 354, 44 P.3d 321 (2002).

Kansas caselaw indicates that courts generally focus on the income that is actually received or distributed to a parent from an S corporation. *In re Marriage of Matthews*, 40 Kan. App. 2d 422, 428-29, 193 P.3d 466 (2008). However, courts are wary of those parents who "[attempt] to hide money in the form of *retained earnings income* within the S corporation to avoid child support payments." (Emphasis added.) 40 Kan. App. 2d at

16

428. To address this concern, courts should consider various factors, such as the "past earnings history of the corporation, ownership share, and the shareholder's ability to control the distribution or retention of net profits in the business." *In re Marriage of Brand*, 273 Kan. at 359-60. "[H]eightened scrutiny should be exercised" if the shareholder can control distributions. 273 Kan. at 359-60.

In *In re Marriage of Brand*, our Supreme Court upheld the district court's decision not to include distributions from a Subchapter S corporation as part of the Father's gross domestic income for child support purposes. The court held that Mother had not shown that the Father, a minority shareholder, had "manipulated corporate assets, decreased the amount of his salary to increase retained earnings, or acted in any way to shield income." 273 Kan. at 355. Similarly, in another case, we "found nothing to show that the father was somehow manipulating the Subchapter S corporation for his own benefit and to the detriment of his minor children." *In re Marriage of Dean*, 56 Kan. App. 2d 770, 776, 437 P.3d 46 (2018).

In the case on appeal, the district court ruled that including some of Amit's company income as his gross domestic income was appropriate under the circumstances. The district court determined that 30% of the profits from Amit's corporation should be considered retained earnings and 70% of the profits included as Amit's gross domestic income. The district judge reasoned:

> "As far as Dad's income, I have read *In the Matter of the Marriage of Brand* and *In the Matter of the Marriage of Matthews*. . . Both of those cases involve subchapter S corporations and gives direction to the Court on how to treat the income from a subchapter S corporation. I believe that this case before me is more like *In the Matter of the Marriage of Matthews* . . . . In *Matthews*, the shareholder in the subchapter S corporation had total control over the distribution of the income. . . . And pursuant to the [Guidelines], this Court is to consider income from all sources . . . . I can consider the income from that subchapter S corporation.

17

"The income to Mr. Guha, in excess of that income that he's paid to himself, and the money that he's taken from the corporation to pay the [spousal] maintenance, totaled $835,000, I think . . . for the year 2015.

"Now, I agree with Mr. Guha that it is good business practice not to spend every cent that would come from that subchapter S money and that some money needs to be kept back every year for cash reserves for emergencies, for expansion, for any number of things. I think Mr. Guha is a conservative man. He, obviously, has not wanted to pay interest, does not want to borrow money in order to finance his company. I don't think those are bad traits or bad characteristics. So of that $835,000, though, I find it's reasonable that every year, he would keep about 30% in his company. So I have sort of, just, stabbed at that. And so I'm adding from the subchapter S corporation, from that subchapter S flow, that $600,000 is his income. And that is in addition to the $128,600 that he pays himself every year as a salary, plus $71,000 he takes from the corporation to pay maintenance."

On appeal, Amit highlights the district court's comment that it "just sort of stabbed" at the 30% retained earnings figure. This comment also concerned Saswati, and she filed a motion for additional findings on the issue. In clarifying its findings, the district judge explained:

"[Amit is] a good businessman and he's smart not to spend every penny that he makes, that he needs to have a rainy day fund, he needs to put money back for investments, and I . . . calculated what I thought was a reasonable amount to be setting aside every year. I think my exact thing was, you know, if he's not Google, you know, he doesn't need to set back a bazillion dollars. He just needs to set back enough to have sufficient cushion if bad things happen or he wants to make—wants to expand.

"I picked that [figure] based on what I thought was reasonable, based upon the accountant who came and testified, based on what he had done historically, based on the amount of money he had in his rainy day fund that he paid out to Mrs. Guha in the settlement of the marriage."

Here, applying the factors enunciated in *In re Marriage of Brand*, the district court appropriately considered including a portion of Amit's S corporation income for child support purposes. While Amit argues the 30% retained earnings figure was arbitrary, we are persuaded there was no abuse of discretion because, as the district court explained, it relied on facts in evidence in arriving at this figure. Our review of the issue convinces us that substantial competent evidence supports the district court's legal conclusion.

The district court heard conflicting expert witness testimony. Other testimony was uncontroverted. For example, Amit is the sole owner of the corporation, has sole control over the distributions, and his past earnings history reveals that he is earning profits at a rapid rate. Moreover, Amit used cash reserves for personal expenditures, such as paying $1.5 million of his property settlement in the divorce and paying Saswati's monthly spousal maintenance payments out of the corporation. As a result, the district court properly gave Amit's Subchapter S corporation heightened scrutiny.

Given our standard of review, the Guidelines, caselaw, the parties' financial situation, the conflicting expert witness testimony, and reasons given by the district court, we conclude that the district court's decision allocating 30% of the Subchapter S corporation's profits as retained earnings and including the remaining 70% of corporate profits as Amit's gross domestic income for purposes of calculating child support was not erroneous.

*Whether the District Court Erred by Not Excluding Taxes Paid on Retained Earnings?*

Next, Amit presents this three-sentence argument:

"The district court further erred in not excluding the income taxes paid personally by Amit on the 30% of business income that it allowed to be reinvested in the corporation. As a pass through entity, Amit paid 100% of the taxes on business income

19

that was retained in the business. There is existing Kansas [caselaw] that address[es] this matter. *In re Marriage of Mathews*, 40 Kan. App. 2d 422, 193 P.3d 466 (2009) and *In re Marriage of Unruh*, 32 Kan. App. 2d 770, 88 P.3d 1241 (2003) addressed this issue, and in each case, the taxes paid on income retained within the business were deducted from child support income."

Saswati responds that Amit failed to raise this issue at trial, and the district court properly did not exclude any taxes paid on the retained earnings. She contends that Amit failed to provide sufficient evidence for the district court to be able to calculate the amount Amit paid in taxes for the company.

Amit did not raise this issue at the child support trial in November of 2016. The journal entry memorializing the district court's rulings—including the order that 30% of the corporation's profits should be treated as retained earnings—was filed on September 28, 2017. Saswati filed a motion to alter or amend the district court's findings but Amit did not file a similar motion. On March 13, 2018, at a hearing to finalize the child support worksheet, Amit first raised this issue. Saswati objected but the district court permitted the parties to argue the matter.

In denying Amit's request, the district judge stated:

"Now, this is a case of where the Court is not intimately familiar with the ins and outs of Subchapter S corporations and their taxability and the tax law that applies to Subchapter S corporations. . . . I've read the case law concerning Subchapter S corporations and its application to child support. But those intricacies, I'm just not familiar with.

"And the arguments made by Mr. Guha, although may be good arguments if he were just strictly a self-employed person without having set up a Subchapter S corporation, may apply to him, but his requests have to do with extrapolations of if I were this, then I would get that, but I'm not this, but it would still be fair for me to get that. And I don't think that I have that flexibility to manipulate tax law or extrapolate tax law

20

into what would give him some more deductions on his income when I don't understand enough of how a Subchapter S corporation is set up that maybe he hasn't already received those benefits. I don't know.

"So to grant Mr. Guha's request for credits for taxes that he paid, I feel like I'm just throwing darts at a board that it may or may not apply and it may or may not have already been taken care of in the tax law as it applies to Subchapter S corporations. Much the same way that I think I'm throwing darts at a board that [Amit] has really received that much of a benefit as being argued by Ms. Meyer as far as his tax refunds from a prior year, in addition to government credits for the type of industry he's in and certain credits that he received there. . . .

"*The bottom line is in order for me to make these findings that both parties are requesting concerning tax benefits . . . what I'm trying to say is I would need expert testimony to go through the tax returns to explain how these tax benefits would or would not apply or should or should not apply, and whether or not, based upon a Subchapter S corporation filing versus a self-employment filing, is there really that much of a tax benefit or tax disadvantage to Mr. Guha*. I just don't think I can intelligently say that either one of you are right or wrong." (Emphasis added.)

Kansas appellate courts have addressed how courts should treat taxes paid by Subchapter S corporation owners:

"S corporations are designed to avoid double taxation on corporate earnings. To that end, shareholders of S corporations receive the benefit of what is known as 'pass-through taxation.' See Black's Law Dictionary 1500 (8th ed. 2004). In other words, the S corporation's income is passed through to its shareholders so that the shareholders are taxed on the income at the end of the year, but the S corporation as an entity is not taxed on the income." *In re Marriage of Matthews*, 40 Kan. App. 2d at 426.

Past courts have distinguished between taxes paid on distributed income versus taxes paid on retained earnings. Taxes paid on distributed income should be included as income for child support purposes, but taxes paid on retained earnings generally should be excluded. *In re Marriage of Matthews*, 40 Kan. App. 2d at 430.

21

Under *In re Marriage of Matthews*, the district court could have excluded 30% of taxes Amit paid on behalf of the company. But the district court did not make findings on whether to include or exclude income taxes paid as income because it did not have sufficient evidence or expert testimony before it to make that finding. Moreover, Garrett testified that the corporation's 2015 tax return was missing the section regarding distributions. Consequently, Garrett was unable to determine whether any distributions went to income for the specific purpose of paying Amit's Subchapter S corporation taxes compared to his personal taxes.

Despite the district court's statements that it would need additional testimony to resolve this issue, Amit did not request another hearing or present supplemental expert testimony. As a result, the district court did not abuse its discretion in declining Amit's oral request to exclude taxes paid on the retained earnings. This issue was not addressed at trial, and there was an insufficient factual basis to make a ruling.

Finally, on appeal the burden was on Amit in making this claim to designate a record sufficient to present his points to the appellate court and to establish his claims. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). Amit has not only failed to designate a sufficient record, but his point raised on appeal is only incidentally briefed. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (A point raised incidentally in a brief and not argued therein is deemed abandoned.). On this record and briefing, we find no error.

*Whether the District Court Erred in Calculating Saswatti's Income?*

For his final issue, Amit makes a one sentence argument: "Finally, the district court failed to impute a proper income to Saswati based on her significant qualifications and experience and her income from investments." As is apparent, Amit has failed to cite to any legal authority or supporting facts. This issue is abandoned. See 306 Kan. at 1089.

FAILURE TO CONSIDER AMIT'S 2015 STATE INCOME TAX REFUND AS INCOME

In a brief cross-appeal, Saswati contends the district court erred in failing to include Amit's state income tax refund of $20,277 as income because it was listed as income on his 2015 tax return, and the Guidelines allow a district court to consider all forms of income when calculating child support.

Amit counters that Saswati's 2015 federal tax return also had itemized deductions of $46,071 which included his state taxes paid in 2015. He argues that the "state [income] tax refund is only relevant and added to the income when deductions are itemized and includes the state taxes paid." According to Amit, "[t]ax logic" requires the district court to consider both deductions and refunds. Employing this logic, Amit submits that if the district court added the state income tax refund of $20,277 as income, it should also subtract $46,071 of standard deductions from Amit's total gross domestic income figure.

Saswati raised the state tax refund issue at the March 13, 2018 hearing to finalize the child support worksheet, just prior to the district court's final rulings. This topic arose during the discussion of whether the district court should exclude income taxes paid on Amit's Subchapter S corporation's retained earnings.

As noted earlier, the district judge stated:

> "I think I'm throwing darts at a board that [Amit] has really received that much of a benefit as being argued by Ms. Meyer as far as his tax refunds from a prior year, in addition to government credits for the type of industry he's in and certain credits that he received there. . . .The bottom line is in order for me to make these findings that both parties are requesting concerning tax benefits, I think I've made it unclear, but what I'm trying to say is I would need expert testimony to go through the tax returns to explain how these tax benefits would or would not apply or should or should not apply."

23

The district court also stated that, because the parties were already using the extended income formula, the child support payment would not likely be affected by any tax credits. The district court declined to make rulings regarding the last-minute tax issues without expert testimony.

Under the Guidelines, the child support schedules already consider the federal and state taxes. Guidelines § II.C. (2019 Kan. S. Ct. R. 85) states: "The schedules take into consideration that income deductions for . . . federal and state income taxes . . . are not available to the family for spending." The schedules are based on after tax incomes. Further, "the gross income of the wage earner, regardless of whether it is taxable or nontaxable, is to be used to compute child support payments." Guidelines § II.D. (2019 Kan. S. Ct. R. 86); 2 Elrod, Kansas Law and Practice: Kansas Family Law § 14:10 (2019).

Here, the competing financial experts did not testify regarding whether the $20,277 state income tax refund should be considered as income. Saswati did not request another hearing or present supplemental expert testimony. On this record, the district court did not abuse its discretion in denying Saswati's request to rule on an issue for which there was an insufficient factual basis and no expert testimony. Under these circumstances, we find no error.

APPELLATE ATTORNEY FEES

Amit filed a motion for appellate attorney fees and expenses under Supreme Court Rule 7.07 (2019 Kan. S. Ct. R. 50). The motion asks that fees and expenses in the amount of $13,434.50 be assessed to Saswati. Saswati opposes the motion.

Supreme Court Rule 7.07(b)(1) (2019 Kan. S. Ct. R. 51) generally provides that an appellate court "may award attorney fees for services on appeal in a case in which the

district court had authority to award attorney fees." Under the Kansas Family Law Code, K.S.A. 2019 Supp. 23-2715, "[c]osts and attorney fees may be awarded to either party as justice and equity require."

Amit is not the prevailing party in this appeal. See *Curo Enterprises v. Dunes Residential Services, Inc.*, 51 Kan. App. 2d 77, Syl. ¶ 6, 342 P.3d 948 (2015) ("With respect to the specific question of attorney fees, it has been stated a prevailing party is the person who has an affirmative judgment rendered in his or her favor at the conclusion of the entire case."). As a result, we conclude that justice and equity do not require that we assess attorney fees and costs against Saswati. Amit's motion for appellate attorney fees is denied.

Affirmed.